UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

FLOYD'S 99 HOLDINGS, LLC,
A Colorado limited liability company,

          Plaintiff,                                 Case No. 2:12-cv-14696

                                                       Hon. Gerald Rosen

JUDE'S BARBERSHOP, INC.,
JUDES BARBERSHOP-OTTAWA, INC.
JUDE'S BARBERSHOP – CASCADE, INC.
JUDE'S BARBERSHOP – KALAMAZOO, INC.
JUDE'S BARBERSHOP – LANSING DT, INC.
JUDE'S BARBERSHOP – LANSING, INC.
JUDE'S BARBERSHOP – PORTAGE, INC.
Michigan corporations, and JBI-COTTONWOOD, LLC,
JBI-EAST PARIS, LLC, JBI-WEALTHY, LLC,
JBI-STANDALE, LLC, JBI-WALLED LAKE, LLC,
JBI-OKEMOS, LLC, Michigan limited liability companies,
and THOMAS MARTIN,

          Defendants.

---

## DEFENDANTS' MOTION TO ENFORCE SETTLEMENT

Defendants Jude's Barbershops, JBI, etc. (collectively "Jude's") and Thomas Martin, through their attorneys, Law Office of James A. Jablonski and Collins Einhorn Farrell, P.C., move to enforce the terms of a settlement made between the parties, and in support of their motion, state as follows:

1.     Plaintiff Floyd's brought this trademark infringement case. Plaintiff claims that Defendants violated Plaintiff's trademark by opening barbershops in Michigan that copied certain trademarked features of Plaintiff's barbershops. (Ex.

1, Complaint). Defendants denied all such claims and asserted various affirmative defenses.

2.   On September 11, 2014, the parties attended the Final Pretrial Conference and reached an agreement to settle the case.

3.   That day, all parties executed a handwritten settlement agreement titled "Settlement Agreement Points." (Ex. 2). That document stated, in part, the following terms:

    a)   Defendants would execute a license for each of their 24 locations for one year, for $1,250 each, payable within ten days of execution.

    b)   At the end of one year, Defendants would have completed the substitution of murals for a poster wall. Defendants could make additional changes so long as there was no infringement to Plaintiff's trademarks or trade dress.

    c)   The case would be dismissed with prejudice.

    d)   Defendants certified that they had removed/changed horizontal signs, vapor lock lighting/pendant bulbs, and no stainless steel counters/cutouts. Toolboxes could remain.

4.   The Settlement Agreement Points constitute a binding agreement between the parties.

5.    The Settlement Agreement Points mention only "a" poster wall and then in the next sentence "the" poster wall and do not discuss any other walls within Defendants' barbershops. (Ex. 2). By its express terms, the Settlement Agreement Points permit Defendants to make any other changes that do not infringe on Plaintiff's alleged trademark.

6.    Plaintiff's registered trademark includes only one primary music-themed poster wall located behind the barber chairs as shown on the trademark. (Ex. 3). The trademark does not include other walls.

7.    Subsequent to September of 2014, counsel for the parties exchanged emails discussing a formal settlement agreement, license agreement, and order of dismissal. (Ex. 4, Ex. 5).

8.    On November 24, 2014, counsel for the Defendants sent a signed Settlement Agreement and proposed License Agreement to Plaintiff's counsel. (Ex. 4). That Settlement Agreement contained a limited, specific definition of "poster wall" in accord with the specifics of the alleged trademark. (Ex. 4).

9.    Plaintiff's counsel responded with changes to the License Agreement, but never sought to modify the Settlement Agreement during those negotiations. (Ex. 5).

10.    On December 9, 2014, counsel for all parties thought that they had reached a final settlement. (Ex. 5). Counsel for Defendants correctly believed that

included the signed Settlement Agreement submitted on November 24, 2014, since that was the last and final counter-offer. (Exs. 4, 5).

11.    Plaintiff has refused to sign the formal Settlement Agreement and Order of Dismissal.

12.    Defendants move this Court to enforce the settlement by enforcing the Settlement Deal Points.

13.    Pursuant to Eastern District of Michigan L.R. 7.1, Defendants sought, but did not obtain, concurrence from Plaintiff's counsel William Jones on February 10, 2015.

WHEREFORE, Defendants request this Court enforce the settlement between the parties, dismiss this case with prejudice, and award any other appropriate relief in Defendants' favor.

LAW OFFICE OF
JAMES A. JABLONSKI

/s/ James A Jablonski
James A. Jablonski
Counsel for Defendants
1801 Broadway, Sue 1100
Denver, CO  80202
jim@jablonski-law.com
303-292-0110

Dated: February 11, 2015

COLLINS EINHORN FARRELL PC

/s/ Timothy F. Casey
Timothy F. Casey (P31836)
Julie E. Nichols (P56921)
Co-Counsel for Defendants
4000 Town Center, Suite 909
Southfield, MI  48034
248-355-4141
Timothy.Casey@ceflawyers.com
Julie.Nichols@ceflawyers.com

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

FLOYD'S 99 HOLDINGS, LLC,
A Colorado limited liability company,

       Plaintiff,                            Case No. 2:12-cv-14696

                                            Hon. Gerald Rosen

JUDE'S BARBERSHOP, INC.,
JUDES BARBERSHOP-OTTAWA, INC.
JUDE'S BARBERSHOP – CASCADE, INC.
JUDE'S BARBERSHOP – KALAMAZOO, INC.
JUDE'S BARBERSHOP – LANSING DT, INC.
JUDE'S BARBERSHOP – LANSING, INC.
JUDE'S BARBERSHOP – PORTAGE, INC.
Michigan corporations, and JBI-COTTONWOOD, LLC,
JBI-EAST PARIS, LLC, JBI-WEALTHY, LLC,
JBI-STANDALE, LLC, JBI-WALLED LAKE, LLC,
JBI-OKEMOS, LLC, Michigan limited liability companies,
and THOMAS MARTIN,

       Defendants.
_____

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO ENFORCE SETTLEMENT

i

# TABLE OF CONTENTS

Concise Statement of Issue Presented ................................................. vi

Factual Background ..................................................................... 5

Argument ............................................................................10

    A.    Michigan & Federal Law Enforce Written Settlement
         Agreements ................................................................10

    B.    The "Settlement Agreement Points" Constitute A Binding
         Settlement ................................................................12

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Bamerilease Capital Corp. v. Nearburg,*
  958 F2d 150 (6th Cir.1992) ...................................................................11

*Bostick Foundry Co. v. Lindberg,*
  797 F.2d 280 (6th Cir. 1986) ..............................................................10

*Faustina v. Town Ctr.*, No.
  311385, 2014 WL 3887191, at *2 (Mich. Ct. App. Aug. 7, 2014) ...................14

*In re Estate of Knopf,*
  2003 WL 356430, at *2 (Mich. Ct. App. February 14, 2003) ......................11, 12

*Kloian v. Domino's Pizza L.L.C.*,
  273 Mich. App. 449, 733 N.W.2d 766 (2006) ...................................................13

*Michigan Reg'l Council of Carpenters v. New Century Bancorp, Inc.*,
  99 F. App'x 15, 24 (6th Cir. 2004) .....................................................................13

*RE/MAX Int'l, Inc. v. Realty One, Inc.*,
  271 F.3d 633 (6th Cir. 2001) ..............................................................................10

*Remark LLC v. Adell Broadcasting,*
  817 F. Supp.2d 990 (E.D. Mich. 2011).................................................11, 14, 15

*Remark, LLC v Adell Broad Corp,*
  702 F.3d 280 (6th Cir. 2012) ........................................................................11

*Rose v. Kroger Co.*,
  201 F.3d 441, 1999 WL 1252896 .....................................................................13

*Starr v United Debt Holding, LLC*,
  2013 WL 4041688, at *2 (W.D. Mich. August 8, 2013) ...................................10

*The Glidden Co v. Kinsella*,
  386 Fed. Appx. 535 (6th Cir. 2010) ...........................................................10, 11

*Thies v Life Ins Co of N Am*,
  2013 WL 6800675, at *1 (W.D. Ky. December 20, 2013)................................14

**Rules**

MCR 2.507 ....................................................................................................13

# <u>CONTROLLING AUTHORITY</u>

*Kloian v. Domino's Pizza L.L.C.*,
    273 Mich. App. 449, 733 N.W.2d 766 (2006) ................................................... 9

*RE/MAX Int'l, Inc. v. Realty One, Inc.*,
    271 F.3d 633 (6th Cir. 2001) ............................................................ 6

*Remark, LLC v Adell Broad Corp*,
    702 F.3d 280 (6th Cir. 2012) ........................................................... 7

## <u>Concise Statement of Issue Presented</u>

1.   Should this Court enter an order enforcing the settlement agreement drafted and signed by the parties on September 11, 2014?

Defendants answer "YES"

## **Factual Background**

Plaintiff Floyd's brought this trademark infringement case claiming that Defendants violated Plaintiff's registered trademark and/or trade dress by opening barbershops in Michigan that copied certain trademarked features of Plaintiff's barbershops.[1] Specifically, Plaintiff's alleged trademark is limited to the following items, which this Court must consider as a whole, not individually:

- Vapor lock lights in metal cages;

- Pendant lighting with exposed bulbs;

- Mechanic's toolboxes;

- Stainless-steel countertops with cut-ins and cut-outs;

- A vertical wall sign; and

- "A" display wall for displaying music themed posters. (Ex. 3).

The registered trademark is both described in words and contains a drawing of the "music themed display wall" above the stainless steel counters. (Ex. 3). The drawing is "intended" to show the "position of such features," including the one poster wall. (Ex. 3).

Plaintiff claimed that Defendants' barbershops infringed on Plaintiff's registered service mark. More specifically, Plaintiff's Complaint described its

---

[1]    At this time, Plaintiff has only two barbershops within the Eastern District of Michigan (Birmingham and Farmington Hills). All of Defendants' locations are in the Western District of Michigan, mostly centered around the Grand Rapids area.

trademark as "the interior of a barbershop encompassing vapor lock lights in metal cages, pendant lighting with exposed bulbs, mechanic's toolboxes, stainless steel countertops with cut-ins and cut-outs, a vertical wall sign, and *a* display wall for displaying music themed posters ('Trade Dress')." (Ex. 1, Complaint ¶ 26) (emphasis added). Defendants denied all such claims and asserted various affirmative defenses, including no likelihood of confusion because of lack of competition and the lack of any recognition of Floyd's trademark in Western Michigan

Throughout the course of litigation, the parties resolved some of the alleged infringements, but the poster wall remained a disputed issue. The parties submitted a Joint Final Pretrial Order on or about September 3, 2014 that outlined their respective positions. Again, Plaintiff described its trademark as having "*a* very prominent poster wall." (Ex. 6, Joint Final Pretrial Order) (emphasis added). To date, Plaintiff has not asserted in any pleading or filing that its trademark somehow encompassed more than "a" poster wall.

On September 11, 2014, the parties attended the Final Pretrial Conference and reached a resolution. That day, the parties executed a handwritten settlement agreement titled "Settlement Agreement Points" that all parties and counsel signed. (Ex. 2). The Settlement Agreement Points allowed Defendants to purchase one-

year licenses for each of their twenty-four locations for $1,250 each. Provision 2 of the Settlement Agreement Points provided:

> At the end of one year, Jude's will have completed the substitution of murals for a poster wall. The murals will not resemble the poster wall and will resemble the exemplars attached to the settlement agreement. In the future, Jude's may make additional changes so long as there is no infringement of Floyd's trademark/trade dress. (Ex. 2).

The parties further agreed to execute a formal settlement agreement and license agreement, and to dismiss the lawsuit with prejudice. (Ex. 2, ¶ 6). Defendants affirmed that they had removed and/or replaced the vapor locks, pendant lighting, countertops, and vertical wall sign.(Ex. 2, ¶ 10). The parties agreed that Defendants could retain the toolboxes. (Ex. 2, ¶ 10).

Counsel exchanged emails discussing the formal settlement agreement, license agreement, and order of dismissal. In one version of the formal settlement agreement, Plaintiff proposed the following statement in Paragraph (b):

> (b)    <u>Jude's Removal of Poster Walls</u>. No later than the conclusion of the one year License Agreements, Jude's will complete the removal of the poster walls from all of its 24 locations and substitute artistic murals or other artistic designs in the place of the poster walls. Poster wall as used herein means the poster wall/collage of the kind referenced in the lawsuit and Explanatory Statement B [this current lawsuit], above. The murals or other artistic designs will not resemble Floyd's poster walls and instead will resemble the exemplars attached to this Settlement Agreement as **Exhibit B**, but may use other artistic designs. Nothing in this Agreement shall be construed to prohibit Jude's from, in the course of time, making changes to their walls provided there is no infringement of Registration 3,467,850.

On November 24, 2014, Defendants' private counsel, Joel Baar, sent a revised settlement agreement—signed by Thomas Martin on behalf of all Defendants—to Plaintiff's counsel Billy Jones. (Ex. 4). That document slightly modified paragraph b, above, and contained a specific definition of "poster wall" to include only the wall above the stainless steel sinks, as outlined in Floyd's trademark picture. (Ex. 4). More specifically, that version provided:

> (b)    Jude's Removal of Poster Walls. No later than the conclusion of the one year License Agreements, Jude's will complete the removal of the poster walls from all of its 24 locations and substitute artistic murals or other artistic designs in the place of the poster walls. Poster wall as used herein means the poster wall/collage of the kind referenced in the lawsuit and Explanatory Statement B [this current lawsuit], above, ***and more specifically the wall directly above the stainless steel counter top and behind the mirrors of the haircutting stations and no other wall***. The murals or other artistic designs will not resemble Floyd's poster walls and instead will resemble the exemplars attached to this Settlement Agreement as **Exhibit B**, but may use other artistic designs. Nothing in this Agreement shall be construed to prohibit Jude's from, in the course of time, making changes to their walls provided there is no infringement of Registration 3,467,850. (emphasis added).

Floyd's responded in emails by contesting a provision of the *license* agreement, <u>not</u> the signed settlement agreement. (Ex. 5). The parties engaged in further discussions regarding *only the license* and, on December 9, 2014, the parties indicated via email they had reached agreement. (Ex. 5). Mr. Baar requested "clean" copies of the documents. Plaintiff's counsel sent the license

8

agreement and a different version of the settlement agreement that did not include the additional sentence that defined the "poster wall."

Defendants objected to this version of the settlement agreement since it did not reflect the signed settlement agreement sent to Plaintiff's counsel on November 24, 2014. Plaintiff refused to accept Defendants' signed settlement even though Plaintiff's counsel, by all evidence, had assented to both the license and the previously submitted signed settlement agreement from Defendants.

The parties do not dispute the license agreement or the order. The parties have tried to resolve the issue and met with the Court on February 3, 2015 at a settlement conference. Defendants believe that Plaintiff's attempts to control all walls of a barbershop are beyond the Settlement Agreement Points and greatly overreach and expand the scope of Plaintiff's alleged trademark/trade dress. The poster wall feature of the trademark is not that extensive – it encompasses, at most, a music-themed display wall on the primary wall. Plaintiff's Complaint and pretrial statement reflect that the poster wall consists of "a" or "one" music-themed poster wall. Defendants have modified the "primary" wall of each barbershop with murals that do not infringe Plaintiff's alleged trademark in any way, as Plaintiff concedes. Plaintiff cannot demand that Defendants agree to remove posters or other items from the other walls, particularly when any such posters are not "music-themed."

Defendants request that this Court enforce the settlement as written and find that the Settlement Agreement Points constitute a binding settlement. Defendants further seek dismissal of this case with prejudice.

## Argument

### A.    Michigan & Federal Law Enforce Written Settlement Agreements

The Sixth Circuit Court of Appeals "has long recognized the broad, inherent authority and equitable power of a district court to enforce an agreement in settlement of litigation pending before it. . ." *Starr v United Debt Holding, LLC*, 2013 WL 4041688, at *2 (W.D. Mich. August 8, 2013) (unpublished) (Ex. 7), quoting *Bostick Foundry Co. v. Lindberg,* 797 F.2d 280, 282–83 (6th Cir. 1986). A district court's enforcement of a settlement agreement is "appropriate where no substantial dispute exists regarding the entry into and terms of an agreement." *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001). "Before enforcing a settlement, a district court must conclude that agreement has been reached on all material terms." *RE/MAX Int'l,* 271 F.3d at 646. The Sixth Circuit has held that "once concluded, a settlement agreement is as binding, conclusive, and final as if it had been incorporated into a judgment. . ." *Bostick Foundry,* 797 F.2d at 283. A court may not alter the material terms of the settlement. *The Glidden Co v. Kinsella*, 386 Fed. Appx. 535, 543 (6th Cir. 2010).

10

Underlying state law governs the Court's determination of whether the parties reached an agreement on the settlement's material terms. *Glidden Co.*, 386 Fed. Appx. at 540. In *Remark LLC v. Adell Broadcasting*, 817 F. Supp.2d 990 (E.D. Mich. 2011), aff'd sub nom. *Remark, LLC v Adell Broad Corp*, 702 F.3d 280 (6th Cir. 2012), the federal court applied Michigan law to determine the enforceability of a settlement agreement reached in a copyright infringement case. The Court noted that "[w]hether a settlement agreement is a valid contract between the parties is determined by reference to state substantive law governing contracts generally." *Id. at* 1001, *quoting Bamerilease Capital Corp. v. Nearburg,* 958 F2d 150, 152 (6th Cir.1992). Similarly, in *Bamerilease*, the Sixth Circuit held the District Court must "apply the choice of law rules of the forum state" to determine whether to enforce a settlement agreement. *Bamerilease Capital Corp*, 958 F.2d 152.

Consequently, Michigan law applies to this dispute. Michigan courts favor settlement agreements and are reluctant to set them aside. *In re Estate of Knopf*, 2003 WL 356430, at *2 (Mich. Ct. App. February 14, 2003) (unpublished) (Ex. 8). Under Michigan law, a settlement agreement becomes binding on the parties when it is evidenced by writing. *Id.*

11

**B.**    <u>**The "Settlement Agreement Points" Constitute A Binding Settlement**</u>

The parties reached a signed agreement as to material terms on September 11, 2014. (Ex. 2). The signed agreement outlined the replacement of murals for "***a*** poster wall" so that the murals would not "resemble ***the*** poster wall." (Ex. 2, ¶ 2). There was no discussion of multiple or "other" walls; rather, all parties understood that Defendants would replace the posters with murals on the primary wall behind the stainless steel counters and sinks. The written agreement reflected those points and further allowed Defendants to make any other changes that did not infringe the alleged trademark. Again, Plaintiff's alleged trademark lists <u>only</u> "a music themed poster wall," *i.e.,* <u>***one***</u> <u>poster wall that has music themed posters</u>. Within one year, Defendants' shops will not have music-themed posters on the primary wall. Defendants have complied with the material terms of the Settlement Agreement Points, which should be enforced as written. In fact, Jude's partially has performed the Settlement Agreement by removing the agreed on poster wall--the only one that was ever alleged to be infringing.

Michigan and federal cases support Defendants' position. In *Knopf, supra,* the parties signed a handwritten settlement agreement outline, which provided that a formal, comprehensive settlement agreement would follow. *Id.* at *1. The parties were unable to agree on a formal settlement agreement. *Id.* The Michigan Court of Appeals held that a handwritten settlement agreement outline was enforceable

12

"even though there were some minor details to be resolved." *Id.* at *2.[2] See also
*Rose v. Kroger Co.*, 201 F.3d 441, 1999 WL 1252896 (6th Cir. 1999) (Ex. 9)
(plaintiff was bound by handwritten settlement agreement signed at court
settlement conference since the document resolved all claims for a specific sum).

In *Kloian v. Domino's Pizza L.L.C.*, 273 Mich. App. 449, 733 N.W.2d 766
(2006), the parties exchanged a series of emails regarding the settlement. The court
determined that the original settlement agreement was embodied in a March 18,
2005, e-mail exchange between the attorneys. Although one attorney subsequently
sought a release, the other attorney did not agree to those terms. The court enforced
the settlement agreement based on the original emails, finding that Michigan courts
will enforce a settlement agreement as to essential terms even when one party
sought to modify the agreement later. *Id.* at 459. *See also Faustina v. Town Ctr.*,

---

[2]     The Michigan court rules mandate that an enforceable settlement
agreement must be made on the record or be in writing signed by the party to be
bound. MCR 2.507(G) provides:

> An agreement or consent between the parties or their attorneys respecting
> the proceedings in an action, subsequently denied by either party, is not
> binding unless it was made in open court, or unless evidence of the
> agreement is in writing, subscribed by the party against whom the agreement
> is offered or by that party's attorney.

Even though the Michigan Court Rules are rules of procedure for Michigan state
courts and may not govern the conduct of a federal district court, the parties here
have an agreement in writing and MCR 2.507 is satisfied. *Michigan Reg'l Council
of Carpenters v. New Century Bancorp, Inc.*, 99 F. App'x 15, 24 (6th Cir. 2004).
(Ex. 12)

No. 311385, 2014 WL 3887191, at *2 (Mich. Ct. App. Aug. 7, 2014) (Ex. 10) (plaintiff was bound by agreement she signed at facilitation even if she believed it did not resolve her ongoing medical expenses).

Similarly, in *Thies v Life Ins Co of N Am*, 2013 WL 6800675, at *1 (W.D. Ky. December 20, 2013) (unpublished) (Ex. 11), the parties reached a resolution in the course of mediation and executed a handwritten settlement agreement setting forth the material terms of the settlement. *Id.* The parties agreed to execute a formal settlement agreement, but could not agree on the specific release and confidentiality language to use in the formal agreement. *Id.* at *2. The District Court found that the parties had manifested their mutual assent to settle in the handwritten settlement agreement and the agreement to more formally memorialize the settlement terms did not negate the creation of a contract by the handwritten agreement. *Id.* The Court looked to the objectively manifested intentions of the parties and held that the parties had formed a valid contract regarding the settlement's material terms and ordered that the handwritten settlement agreement be enforced as written. *Id.* at *3.

The Sixth Circuit has rejected subsequent attempts to modify the settlement after a formal writing. In *Remark*, *supra*, the Sixth Circuit rejected the argument that a subsequent formal agreement was a "material term" to the settlement. Absent

a specific reservation of a right to modify the agreement pending a "final"

agreement, the Sixth Circuit upheld the original agreement signed by all parties:

> All Adell argues is that it reserved assent until the final writing had
> been signed—that the execution of the formal agreement was a
> material term of the contract, and thus unmet so long as the document
> remained unsigned. Yet there is no contemporaneous, or for that
> matter later, evidence to support such a reservation, whether in the
> form of oral or written communications between the parties. All we
> have is unexceptional language in the agreement saying the contract
> would be "effective as of the date the parties sign the Agreement."
> Like the district court, we think this boilerplate provision amounts to a
> reference point for the date upon which payment would be due, not a
> material term of the agreement. <u>Were it otherwise, a subsequent
> decision to reduce an agreement to a more formal writing always
> would give the parties one last chance to back out of (<em>i.e.,</em> undo) the
> agreement, making oral agreements and informal written agreements a
> relic and reversing the Restatement's rule and exception</u>. At oral
> argument, Adell confirmed as much, acknowledging that under its
> theory of the case Adell could back out of this agreement at the time
> of signing (with no other reservation of rights), offer to pay $40,000 to
> settle the case, proceed to make a deal, then repeat the exercise at the
> next time of signing, make a new deal for $30,000, and so on. Parties
> who wish to dicker in such sharp-elbowed fashion and in the context
> of such a simple, straightforward settlement must reserve their rights
> to do so. Adell did no such thing.

*Remark, LLC*, 702 F.3d at 284-85 (emphasis added).

Defendants seek the same remedy here. On September 11, 2014, the parties

resolved the remaining issues and agreed on the material terms of the mutual

resolution of those issues, including the amount of payment involved. Defendants

affirmed that they had removed and/or replaced four of the six elements claimed by

the Plaintiff (vapor lock lighting, pendant lighting, stainless steel counters with cut

outs, and vertical signs). The parties also agreed that the Defendants' could continue to use mechanic's tool boxes without constituting any infringement. Finally, the parties agreed on specific and material terms with regard to the Defendants' removal of a poster wall in each of its locations. Defendants have complied with all terms of the Settlement Agreement Points and have started the lengthy and expensive process of replacing the primary poster wall with murals.

Defendants request that this Court find that the Settlement Agreement Points constitute a binding settlement of all material terms. Defendants request that this Court enforce the Settlement Agreement Points and dismiss the case with prejudice.

## **<u>Requested Relief</u>**

Defendants request this Court enforce the Settlement Agreement Points signed by all parties on September # 11, 2014, and dismiss the case with prejudice. Defendants further seek costs, attorneys' fees or any other relief in their favor.

Respectfully submitted,

LAW OFFICE OF                    COLLINS EINHORN FARRELL PC
JAMES A. JABLONSKI

_/s/ James A Jablonski_          _/s/ Timothy F. Casey_
James A. Jablonski               Timothy F. Casey (P31836)
Counsel for Defendants           Julie E. Nichols (P56921)
1801 Broadway, Sue 1100          Co-Counsel for Defendants
Denver, CO 80202                 4000 Town Center, Suite 909
jim@jablonski-law.com            Southfield, MI 48034
303-292-0110                           248-355-4141
Dated: February 11, 2015         Timothy.Casey@ceflawyers.com
                                 Julie.Nichols@ceflawyers.com

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 11, 2015 I electronically filed the foregoing document with the Clerk of the Court using the ECF systems which will send notification of such filing to all counsel of record and I hereby certify that a paper copy will be hand-delivered to the Judge assigned to this matter.

<u>*/s/ Barbara Lamb*</u>
Barbara Lamb