# EXHIBIT 6

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

**FLOYD'S 99 HOLDINGS, LLC,**
**a Colorado limited liability company,**          )    Hon. Gerald E. Rosen
                                                    )    Referred to Hon. Paul J. Komives
                    Plaintiff,                      )
v.                                                  )
                                                    )
**JUDE'S BARBERSHOP, INC., et al.,**               )    Case No.: 2:12-cv-14696-GER-PJK
                                                    )
         Defendants                                 )
                                                    )

---

### JOINT FINAL PRETRIAL ORDER

**1.      STATEMENT OF JURISDICTION**

This Court has jurisdiction pursuant to 28 U.S.C. §1331 and 1338 because it arises under the Lanham Act and because the common law claims are substantially related to all claims arising under federal trademark law.

**2.      PLAINTIFF'S CLAIMS**

In this lawsuit, Floyd's 99 claims that Jude's Barbershop intentionally infringed upon its federally protected trade dress. Floyd's asserts claims for trademark infringement pursuant to 15 U.S.C. § 1114(1), unfair competition pursuant to 15 U.S.C. § 1125(a) and (b) and common law claims for unfair competition and trademark infringement. Floyd's seeks preliminary and permanent injunctive relief, including enjoining Jude's from any use of Floyd's 99's trademarks, an award to Floyd's 99 of its actual damages, disgorgement of Jude's unlawfully obtained profits, treble damages and attorneys' fees under 15 U.S.C. § 1117.

In 2001, Floyd's 99 opened its first barbershop in Denver, Colorado. Floyd's currently has over 70 locations in 12 states and 2 countries. From its inception, Floyd's 99 distinguished itself through its trade dress consisting of its unique interior design with vapor lock lights in metal cages, pendant lighting with exposed bulbs, mechanic's toolboxes and a very prominent poster wall.

Floyd's 99 obtained a federal registration for its distinctive trade dress on July 15, 2008.[1] Floyd's trade dress registration, 3,467,850, covers the look and feel of its barbershop which, as the USPTO confirms, is inherently distinctive in the market place. The registrations provide Floyd's superior rights in its federally protected trade dress throughout the United States regardless of the territory in which it uses the mark. Thus, the geographic location of Floyd's stores is irrelevant, and not limited to, the geographic areas where it is able protect its trade dress.

In 2005 Jude's owner, Thomas Martin, traveled to Denver, Colorado to visit a Floyd's 99's barbershop and had his daughter take a picture of him sitting in a Floyd's barber chair in front of Floyd's distinctive poster wall. Martin then returned to Michigan and intentionally used the photograph of Floyd's to promote and advertise his not yet opened copycat business, Jude's Barbershop. Martin went so far as to use Floyd's 99's *"Not Your Grandfather's Barbershop"* trademark in his advertisement. Floyd's demanded that Jude's cease and desist its infringing behavior but Jude's only response was to open 20 offending shops and continue to blatantly use Floyd's 99's protected

---

[1] Floyd's previously obtained registrations in 2003, 2006 and 2007 for "BARBERSHOPS FLOYD'S 99 FOR MEN & WOMEN OLD SCHOOL NEW STYLES" "NOT YOUR GRANDFATHER'S BARBERSHOP" and "THE ORIGINAL ROCK 'N ROLL BARBERSHOP".

trade dress to create the same or confusingly similar commercial impressions to the public.

Floyd's 99 can demonstrate a "likelihood of confusion" as required to prove its claims and has substantial evidence of actual consumer confusion, mistake and deception. For example, actual consumers have asked whether Jude's is a franchise of Floyd's 99 operating under a different name while complaining of the poor service at Jude's. Others have written asking about the similarities between the two chains. Another customer of Floyd's stopped to a haircut at Jude's only realizing part way through his visit it, because of the poor quality he experienced, that it was not in fact a Floyd's.

Floyd's seeks attorneys' fees under the Lanham Act on the grounds that Jude's owner wilfully infringed, or rather, he knew his conduct was copying Floyd's.

3.      **DEFENDANT'S DEFENSES**

    **No likelihood of confusion**

    **Floyd's and Jude's are not competing in the same geographic area**

Defendants' principal assertion is that there is no likelihood of confusion between Jude's and Floyd's trade dress because there they are not in competition and because Floyd's has no presence in Western and Northern Michigan. JBI -Walled Lake, LLC and JBI – Ford, LLC, the only two Jude's Barbershops in the Detroit area, permanently ceased operations as of June 27, 2013. This was immediately before Floyd's opened in the Detroit area.

The greatest number of Jude's barbershops are located in and around Grand

Rapids and Kalamazoo. Jude's has 24 shops, all in the Western District of Michigan. Jude's has no intention to return to the Detroit metropolitan area. Any likelihood of confusion must necessarily be in and around Grand Rapids and Kalamazoo and immediate environs, where Jude's has its shops. Floyd's has no shops in these areas and no presence otherwise such that consumers would even be aware of its registered trade dress.

Plaintiff must show more than a mere possibility of confusion. *See August Storck,* 59 F.3d at 618. *A & H Sportswear Co., Inc. v. Victoria's Secret Stores, Inc.*, 57 F.Supp.2d 155 (E.D.Pa. 1999). Many courts of appeal have endorsed the view that "[e]vidence of only a small number of instances of actual confusion can be dismissed as inconsequential or de minimis." *McNeil Nutritionals,* 511 F.3d at 366, *quoting* 4 McCarthy § 23:14, collecting cases.  Just as one tree does not constitute a forest, an isolated instance of confusion does not prove probable confusion. *Noasha LLC v. Nordic Group of Companies, Ltd.*, 630 F.Supp.2d 544 (E.D.Pa. 2009).

The focus must be on Jude's doing business at the same time in the same place as Floyd's.  That is the proximate cause of the alleged injury. ("[I]n cases involving trademark infringement and unfair competition, the wrong takes place not where the deceptive labels are affixed to the goods or where the goods are wrapped in the misleading packages, but where the passing off occurs, i.e., where the deceived customer buys the defendant's product in the belief that he is buying the plaintiffs."). *Golden Scorpio Corp v. Steel Horse Bar & Grill*, 596 F. S.2d 1282, 1287 (2009 D. Ariz.).

Page | 4

The case law is clear that where there are no competing businesses, there can be no likelihood of confusion and thus no infringement. There has been no infringement by Jude's because there is no likelihood of confusion until there is a real, present and impending entry by Floyd's into Jude's area of operations.  McCarthy on Trademarks, Sec. 26:33-34.  *Comidas Expuisitos, Inc. v. O'Maley & McGee's, Inc.*, 775 F.2d 260 (8th Cir. 1985) (use of name with knowledge of registrants use elsewhere immaterial); *Fairway Foods, Inc. v. Fairway Markets, Inc.*, 227 F.2d 193, 107 U.S.P.Q. 253 (9th Cir. 1955); *Continente v. Continente,* 378 F.2d 279, 153 U.S.P.Q. 832 (9th Cir. 1967); *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1536 (4th Cir. 1984); *Minnesota Pet Breeders v. Schell & Kampeter,* 41 F.3d 1242, 33 U.S.P.Q. 2d 1140 (8th Cir. 1994)(no profits should be awarded either); *Lone Star Steakhouse & Saloon v. Alpha of Virginia,* 43 F.3d 922, 932 (4th Cir. 1995) (a competing user could use the mark there until the registrant extended its business to the area); *What-A-Burger of Virginia, Inc. v. Whataburger, Inc. of Corpus Christi, Texas, 357 F.3d 441, 447, n.4, (4th Cir. 2004);* American Foods, Inc. v. Golden Flake, Inc. 312 F.2d 619 (5th Cir. 1963); *John R. Thompson Co v. Holloway,* 366 F.2d 108  (5th Cir. 1966); *Holiday Inns of America, Inc. v. B & B Corp.*, 409 F.2d 614, 161 U.S.P.Q. 385 (3d Cir. 1969).

As stated most clearly in an oft cited Fourth Circuit case:

> Mere use of a mark that is similar or even identical to a registered trademark does not *a fortiori* establish infringement. The "keystone of infringement" is "the likelihood of confusion." *Sara Lee,* 81 F.3d at 462 (internal quotation marks omitted); *see* 15 U.S.C.A. § 1114(1)(a) and (b) (West 1997 & Supp.2003) (infringement of a registered mark requires use that "is likely to cause confusion, or to cause mistake, or to deceive").

… ("[W]hen the public does not encounter the two marks together, it is inappropriate to focus on minor stylistic differences to determine if confusion is likely."). Usually, a court should consider a number of factors relating to the way in which the competing marks operate in the workplace. *See Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1527 (4th Cir. 1984) (providing a non-exclusive list of seven factors). For example, courts have considered "the similarity in scope of the parties' geographic markets" in deciding whether a likelihood of confusion exists. *Kellogg,* 209 F.3d at 572; *see Profitness Therapy,* 314 F.3d at 69-70 (comparing the territorial markets in which the parties operated); *Thomas & Betts Corp. v. Panduit Corp.,* 138 F.3d 277, 296 (7th Cir. 1998) (considering "the area and manner of concurrent use" of the trademarks). Another consideration when "the goods or services are sold in different territories" is "the extent to which the senior user's designation is known in the junior user's territory." 3 McCarthy at § 23:19.

The registration of Floyd's 99 gave it an exclusive ownership of the mark and a right to use that mark (trade dress) in Michigan. However, that right has largely remained unexercised, during which time any use of similar trade dress by Jude's in Michigan was not unlawful. Today Floyd's has no shops in Western or Northern Michigan where Jude's is active.

Floyd's does not have a patent or copyright, with their right to exclude others anywhere any time. Floyd's has no design patent, whereby it can prevent use by another regardless of lack of any competition. Its' trade dress is solely for the purpose of exclusive use in an area of competition, to avoid likelihood of confusion. See *What-A-Burger of Virginia, Inc. v. Whataburger, Inc. of Corpus Christi, Texas,* 357 F.3d 441, 451 (4th Cir.2004). It is important to remember that under the law there is no infringement and Floyd's has no claim of infringement until such time as the parties are in competition in the same area.

*What-A-Burger of Virginia, Inc. v. Whataburger, Inc. of Corpus Christi, Texas,* 357 F.3d 441,450 (4th Cir. 2004).

> There is no factual allegations that one haircut or shave or sale of a can of hair spray was lost to Jude's by Floyd's in Colorado (or Michigan for that matter). The fact that the two were not in competition undermines any such inferences and is the reason for the *Dawn Donut* Rule.

**Floyd's trade dress is not known among an appreciable number of purchasers of barbershop services in Western and Northern Michigan and the trade dress is not associated with that single source.**

A consideration in determining any likelihood of confusion when "the goods or services are sold in different territories" is "the extent to which the senior user's designation is known in the junior user's territory." *3 McCarthy* at §23:19. Floyd's has never had a shop in Western or Northern Michigan, has never advertised in that area and its' trade dress is simply not known by any appreciable number of people.

**Poster walls and toolboxes are in common use by others in barbershops**

One of the "likelihood of confusion" factors listed by the Federal Circuit is "the number and nature of similar marks in use on similar goods." *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (C.C.P.A. 1973). Third party uses of similar marks are relevant to illustrate that the mark in question is relatively weak, making confusion less likely. Thus evidence of third party usage of a mark can be introduced at trial. Where multiple third parties are using similar marks, the coexistence of the various market players show that confusion is unlikely. The two remaining elements of Floyd's trade dress in dispute are the poster wall and the toolboxes.

**Floyd's trade dress is not inherently distinctive and is not distinctive through secondary meaning.**

Floyd's trade dress is not inherently distinctive, being a number of commonly used interior design features and the use of tool boxes to store cutting implements. To establish secondary meaning of trade dress, the Plaintiff must show that in the mind of the public, the primary significance of the trade dress at issue is to identify and individualize the source of a service. Plaintiff cannot show that the primary significance of its interior design trade dress is to identify and individualize its barbershops, based on the commonality of the use of the interior décor and themes that Plaintiff claims to be its exclusive trade dress.

**Defendant Jude's and Martin also contend there is no infringement.**

Jude's never did have music themed poster walls.  Its walls have sports figures, humor, actors and actresses, celebrities, scantily clad women etc. Also Jude's has made significant changes to its interiors, including removing vertical signs, pendant lighting, vapor lock lights in metal cages, and stainless steel counters with cut-ins and cut-outs that are part of Floyd's Registration. Since well before the time Floyd's came to Michigan, Jude's had a materially altered interior appearance.

## AFFIRMATIVE DEFENSES

**Prior use of the mark by Rudy's Barbershops.**

Defendants Jude's and Martin contend that they are not liable to Floyd's for infringement because of prior use of the mark by Rudy's Barbershop and because Floyd's trade dress is confusingly similar to Rudy's.  Defendants have the burden of

proving by a preponderance of the evidence that the mark has been subject to prior use. *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*; 78 F3d 1111, 1124 (6th Cir. 1996); *Old Dutch Foods, Inc v Dan Dee Pretzel & Potato Chip Co*, 477 F2d 150, 156 (6th Cir. 1973)

The poster wall which is above the stainless steel counter tops is similar in that Rudy's has posters or pictures fastened to their wall the same way as Floyd's. The stainless steel counter tops used by Rudy's are similar in look and location as Floyd's. The height and distance from the wall projecting out into the room is similar. The Pendant Lights that Rudy's uses look the same as the ones used by Floyd's. Although toolboxes are a popular item used in salons and barbershops for years, the toolboxes used at Rudy's are the same as or similar to the ones used by Floyd's. The placement of the tool boxes on the stainless steel counter top is similar. The mirror placement at Rudy's, tilted out at the top, is similar to the mirror placement at Floyd's. The menu Rudy's uses to display their services and prices uses the phrase "For Men and Women", the same phrase used by Floyd's. The font on Rudy's menu looks the same or similar to the one used by Floyd's. The shape of the menus are similar, both being three times longer from top to bottom as they are wide. The front desk that Rudy's uses to display product and to check-in and cash out customers is similar to Floyd's in that both use a circular front desk with the product displayed below the counter. The signage used by Rudy's is similar to the signage used by Floyd's as they both use the phrase "For Men and Women". The placement of the tools at Rudy's -- hanging under the counter top-- is similar to Floyd's. The video on Rudy's website in which the owners

and founders of Rudy's are interviewed and talk about the musical influence on Rudy's is similar to Floyd's using music for their music themed poster wall and providing piped in music.

Rudy's has a prior right to use of tool boxes and poster walls in a barbershop because it first used such tradedress well before Floyd's. Stainless steel counter tops and pendant lights were first used by Rudy's and later copied by Floyd's. A common law trademark is acquired by use. The video on Rudy's web site shows the stainless steel counter tops and pendant lights.   Floyd's deliberately copied those features from Rudy's.

### Trademark Invalidity -- Fraud on the USPTO

In defense of Floyd's claim for trademark infringement, defendants claim that Floyd's registered trademark is invalid. A registered trademark is invalid if the registration or the incontestable right to use the registration was obtained fraudulently. The defendants have the burden of proving the invalidity of the registered mark by a preponderance of the evidence. *3M Co. v. Intertape Polymer Group, Inc.*, 423 F. Supp. 2d 958, 961; 2006 WL 763210 (D. Minn. 2006); *Scooter Store, Inc. v. SpinLife.com, LLC*, 777 F. Supp. 2d 1102, 2011 WL 1460438 (S.D. Ohio 2011); *Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1114; 2010 WL 1644256 (9th Cir. 2010).

Paul O'Brien stated in his deposition that he visited at least one Rudy's a year prior to starting Floyd's. Karen O' Brien also stated that she visited one Rudy's for the purpose of noting its interior. After Jude's opened its first few locations, Floyd's owners had their lawyer file an application for Floyd's trade dress even

though the application states; "he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true." The owners of Floyd's knew Rudy's had a superior right to the same trade dress Floyd's was seeking to Register as a trademark.    They also knew that Rudy's had the right to use these marks in commerce as they had been using them for at least a year prior to Floyd's opening their first location.  They also knew that Rudy's trade dress was the same or similar to that of Floyd's and that by Floyd's using the same or similar trade would or could cause confusion or deceive.  They also knew their statements were untrue.

Likewise, Plaintiff is unable to prove that there is a probability of confusion between Plaintiff and Defendants' barbershops.  Plaintiff also fails to prove that it has a protectable trade dress because its registration of such trade dress was obtained fraudulently.

4.    **STIPULATION OF FACTS**

a. Floyd's 99 has a federal registration, Registration 3,467,850.

b.  Floyd's 99 federally registered trade dress consists of the design of the interior of its barbershop encompassing vapor lock lights in metal cages, pendant lighting with exposed bulbs, mechanic's tool boxes, stainless steel countertops with cut-ins and cut-outs, a vertical wall sign, and a display wall for displaying music themed posters.

c.  Floyd's 99 owns and sells franchises which operate over 70 barbershops using its federally registered trademarks and trade dress.

d.  To date, Jude's has opened at least 23 barbershops.

5.  **ISSUES OF FACT TO BE LITIGATED**

a.  Whether Plaintiff has a protectable trade dress (Floyd's believes this to be undisputed).

b.  Whether Jude's and Floyd's are engaged in competition in any geographic area (Floyd's believes this is irrelevant.)

c.  Whether Floyd's trade dress is known by any appreciable number of consumers of barbershop services in Jude's business territory. (Floyd's believes this is irrelevant.)

d.  Whether Jude's knowingly or willfully copied Floyd's trade dress.(Jude's believes this is not the issue.)

e.  Whether Jude's knowingly or willfully passed off it services as those of Floyd's.

f.  Whether Jude's intended to confuse or deceive consumers by adopting and using trade dress that is the same or similar to Floyd's mark.

g.  Whether there has been prior and concurrent use in barbershops by others of two elements of the trade dress, music themed poster walls and toolboxes, weakening Floyd's tradedress. (Floyd's believes Jude's has no standing to raise this issue and will not try the same by consent.)

h.  Whether Floyd's intentionally failed to disclose Rudy's Barbershop's prior use of the tradedress at the time of its registration of its tradedress.   (Floyd's does not believe this states the proper standard.)

**6.     ISSUES OF LAW TO BE LITIGATED**

a.  Whether Jude's infringed upon Floyd's trade dress.

b.  Whether any use by Jude's of Floyd's tradedress is likely to cause confusion among consumers.

c.  Whether Jude's violated 15 USC § 1114(1).

d.  Whether Jude's violated 15 USC § 1125(a) and (b).

e.  Whether Jude's violated Section 43(a) of the Lanham Act.

f.  Whether Jude's engaged in common law unfair competition.

g.  Whether Jude's engaged in common law trademark infringement

h.  Whether Jude's knowingly or willfully infringed upon Floyd's trade dress.

i.  Whether Floyd's committed fraud on the USPTO by failing to disclose Rudy's Barbershops use of the trade dress.

j.  Whether Floyd's Registration is invalid.

7.    **EVIDENCE PROBLEMS LIKELY TO ARISE AT TRIAL.**

Jude's objects to any claim of actual damages or attempted recovery of Jude's profits. There has never been any disclosure of such damages at any time during this lawsuit. See Floyd's Rule 26 Disclosure dated October 21, 2013 and Floyd's Responses to Interrogatories dated November 20, 2013. Further there is no evidence to support such a claim.

Floyd's objects to Jude's use of any witness or exhibit at trial that not previously disclosed in accordance with the rules of civil procedure. Floyd's also reserves the right to object to the admissibility of certain witnesses testimony at trial (Weigel and Trent) on the grounds their testimony is not relevant to any valid defense raised by Jude's. Floyd's may file motions in limine related to the admissibility of testimony or evidence regarding Rudy's Barbershop, and other barbershops, on the grounds Floyd's trademark registration is incontestable and any affirmative defense of prior use/fraud on the USPTO may not be raised by Jude's as it does not have standing nor are such defenses valid in response to Floyd's claims.

8.    **WITNESSES**

    a.  **Plaintiff Will Call:**

        i.    Karen O'Brien

        ii.   Paul O'Brien

        iii.  Gerard Laurenza

        iv.   Thomas Martin

b. **Plaintiff May Call:**

    i.    Dan McNamee

    ii.    Jo Zemla

    iii.    Sue Zemla

    iv.    Robert O'Brien

    v.    William O'Brien

    vi.    Daniel Snider

    vii.    Jane Lynn VanderLaan

    viii.    Stacey Patulski

    ix.    Sharleen Clements

    x.    Joni Laskie

    xi.    Monica Favano

    xii.    Stephanie Kozdron

    xiii.    Brian Whitfield

    xiv.    Amy Hunn

    xv.    Pete Vercellin

    xvi.    Megan Clark

    xvii.    Kelley Bennema

c. **Defendants Will Call:**

    i.    Thomas Martin

    ii.    Charles Shattelroe

    iii.    Katie Trent (by Deposition)

       iv.   Wade Weigel(by Deposition)

   d.  **Defendants May Call:**

       i.   Deana M. Ferwerda

       ii.   Marie A. Manifold

      iii.   Amelia Gustafson

      iv.   Angie Dykgraaf

       v.   Jon Rauch

      vi.   Paul O'Brien

     vii.   Karen O'Brien

**9.**    **DEPOSITIONS**

The Court previously granted Jude's motion to allow the use of video depositions of Wade Weigel and Katie Trent.  Floyd's reserves all objections to the admissibility yof such depositions at trial.  The parties thus designated the video-taped deposition testimony of the following witnesses:

   a.  Katie Trent

   b.  Wade Weigel

**10.**    **EXHIBITS**

Plaintiff's Exhibit List and Defendants' Exhibit List are attached hereto as Exhibits A and B.  Plaintiff's objections to Defendant's Exhibits is attached as Exhibit C and Defendant's objections to Plaintiff's Exhibits is attached as Exhibit D.

11.    **DAMAGES**

Floyd's seeks preliminary and permanent injunctive relief, including enjoining Jude's from any use of Floyd's 99's trademarks, an award to Floyd's 99 of its actual damages, disgorgement of Jude's unlawfully obtained profits, treble damages and attorneys' fees under 15 U.S.C. § 1117.

12.    **TRIAL**

    a. **Time for Plaintiff's Proofs:**  Plaintiff anticipates requiring 2.5 to present its case in chief and .5 for rebuttal.

    b. **Time for Defendants' Proofs:**  Defendants anticipate requiring 2.5 to present its defense.

    c. **This matter is set for a:**  Jury Trial.

    d. The Parties **do not** stipulate to a less than unanimous verdict.

    e. The Parties **do not** stipulate to a verdict of less than six, but not less than five jurors should jurors need to be excused during the trial.

13.    **SETTLEMENT**

The Parties have conferred and considered the possibility of settlement.   The Parties participated in mediation twice, unsuccessfully.  The most recent mediation was held before Jon R. Muth of Miller Johnson on April 28, 2014.

14.    **FAILURE OF COUNSEL TO COOPERATE**

The parties have fully cooperated in the submission of this pretrial order. Failure to strictly comply with this Joint Pretrial Order may result in dismissal of claims, default

judgment, refusal of allowing witnesses to testify or admit exhibits, assessment of costs and expenses, including attorney fees, or other appropriate sanctions.

**15.    TRIAL BRIEFS AND JURY INSTRUCTIONS**

Trial Briefs and Jury Instructions shall be filed no later than the last business day prior to trial.

**16.    JUROR COSTS**

The parties acknowledge that the Court may assess juror expenses under L.R. 38.3.

/s/ Liza Getches
Counsel for Plaintiff

/s/ James Jablonski
Counsel for Defendants

SO ORDERED.

Hon. Gerald E. Rosen
Chief U.S. District Court Judge