# EXHIBIT 7

2013 WL 4041688
Only the Westlaw citation is currently available.
United States District Court,
W.D. Michigan,
Southern Division.

Markelle STARR, Plaintiff,
v.
UNITED DEBT HOLDING, LLC et al., Defendants.

No. 1:12–cv–426.    |    Aug. 8, 2013.

**Attorneys and Law Firms**

Phillip C. Rogers, Grand Rapids, MI, for Plaintiff.

Charity A. Olson, Olson Law Group, Ann Arbor, MI, for Defendants.

## OPINION

JANET T. NEFF, District Judge.

*1 Pending before the Court is Plaintiff's Motion for Judgment Based on the Parties' Written Settlement Agreement (Dkts 24–27), which seeks summary judgment against Defendants on the basis of the terms of an alleged settlement of this case between the parties. Defendants have filed a Response (Dkts 32–34), and Plaintiff has filed a Reply (Dkts 28, 30). Having fully considered the parties' briefs and the record, the Court concludes that oral argument is unnecessary to resolve the pending motion. *See* W.D. Mich. LCivR 7.2(d). For the reasons that follow, the Court grants the motion.

### I. Background Facts

Plaintiff Markelle Starr filed this case on May 1, 2012 against Defendants United Debt Holding, LLC (UDH) and Craig Alan Manseth, alleging Defendants re-sold Plaintiff's disputed payday loan account after it was settled in a previous case in this district, 1:11–cv–70 ("Powell/Lighthouse matter"), in violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, and the Michigan Collection Practices Act (MCPA), MICH. COMP. LAWS § 445.251 *et seq.* (Statement of Material Facts [1] (SMF), Dkts 26, 32–1, ¶ 1). Approximately two weeks after this suit was filed, on May 14, 2012, counsel for Defendants, Charity Olson, emailed Plaintiff's counsel, Phillip Rogers, requesting a settlement demand (*id.* ¶ 2). Two days later, on May 16, 2012, Rogers responded to Olson by email with a settlement agreement, offering to settle for $5,500.00 (*id.* ¶ 3).

Over the course of the next two weeks, Olson and Rogers exchanged a lengthy series of email offers and counteroffers regarding the settlement amount and language, culminating on May 31, 2012 with a purported settlement confirmed by counsel (SMF ¶¶ 4–18). Accordingly, that same day, Rogers sent an email to Olson, with an attached Third Revised Settlement Agreement signed by Plaintiff (*id.* ¶ 19). Olson responded by email that same day stating in pertinent part: "Thanks Phil. Client will be reviewing and executing in short order"(*id.* ¶ 20).

Subsequently, on June 4, 2012, Olson sent an email to Rogers, stating in part: "My clients have reviewed the release and have requested inclusion of a provision by Plaintiff representing and warranting that the prior settlement agreement between Plaintiff and Lighthouse/Powell did, in fact, extinguish the debt *and* was binding on UDH"(*id.* ¶ 21). Rogers sent an email back to Olson the same day, objecting to any further changes to the settlement agreement and stating in part: "We have a deal. I am not going back to my client and ask her now to make additional representations, guarantees, or whatever"(*id.* ¶ 22).

The Settlement Agreement was never signed by Defendants, and this motion ensued for the Court's decision whether to enforce the alleged settlement.

### II. Legal Standard

A moving party is entitled to a grant of its motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."FED. R. CIV. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must consider the evidence and all reasonable inferences in favor of the nonmoving party. *U.S. S.E. C. v. Sierra Brokerage Servs., Inc.,* 712 F.3d 321, 327 (6th Cir.2013) (citing *Tysinger v. Police Dep't of City of Zanesville,* 463 F.3d 569, 572 (6th Cir.2006)).

*2 The moving party has the initial burden of showing there is no dispute regarding any genuine issue of material fact. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir.2010). The burden then "shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). "A genuine dispute concerns evidence 'upon which a reasonable jury could return a verdict in favor of the non-moving party.' A factual dispute is material only if it could affect the outcome of the suit under the governing law." *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 673 (6th Cir.2013) (quoting *Tysinger*, 463 F.3d at 572). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir.2012) (quoting *Anderson*, 477 U.S. at 251–52).

### III. Analysis

The record on which the Court must base its decision is not in dispute. The parties have submitted the email communications between counsel, setting forth the course of the settlement negotiations, and the final email exchange that is the focus of their present dispute. Plaintiff argues that these emails establish that the parties, through their respective attorneys, negotiated a written settlement of this lawsuit, and days later, Defendants reneged and filed their answer.

Defendants argue that the parties never reached a binding agreement regarding all material terms of the proposed settlement, and even if an agreement was reached, the Court should decline to enforce it because it was obtained improperly.

#### A. Settlement Agreement

The Sixth Circuit "has long recognized the broad, inherent authority and equitable power of a district court to enforce an agreement in settlement of litigation pending before it, even where that agreement has not been reduced to writing." *Bostick Foundry Co. v. Lindberg*, 797 F.2d 280, 282–83 (6th Cir.1986) (citing cases); *see also Universal Settlements Int'l, Inc. v. Nat'l Viatical, Inc.*, No. 1:07–cv–1243, 2011 WL 1642341, at *3 (W.D.Mich. May 2, 2011). "Once concluded, a settlement agreement is as binding, conclusive, and final as if it had been incorporated into a judgment and the actual merits of the antecedent claims will not thereafter be examined." *Bostick Foundry*, 797 F.2d at 283.

A district court's summary enforcement of a settlement agreement is "appropriate where no substantial dispute exists regarding the entry into and terms of an agreement." *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir.2001) (citing *Kukla v. Nat'l Distillers Prods. Co.*, 483 F.2d 619, 621 (6th Cir.1973); *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir.1976)). "Before enforcing a settlement, a district court must conclude that agreement has been reached on all material terms." *RE/MAX Int'l*, 271 F.3d at 646; *see also Therma–Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 419 (6th Cir.2000). Where there are disputed issues of fact concerning the existence of an agreement, or the terms, summary enforcement without an evidentiary hearing is improper:

> *3 No evidentiary hearing is required where an agreement is clear and unambiguous and no issue of fact is present. [*RE/MAX*, 271 F.3d at 646]. However, the District Court must conduct an evidentiary hearing when the situation presents substantial factual issues related either to the formation or the consummation of the contract. *Bobonik v. Medina Gen. Hosp.*, 126 F. App'x 270, 274 (6th Cir.2005) (citing *RE/MAX*, 271 F.3d at 646).

*Cuyahoga Valley Ry. Co. v. U.S. Bank Trust Nat'l Ass'n*, —— F. App'x ——, 2013 WL 611369, at *3 (6th Cir. Feb.20, 2013).

The crux of the parties' dispute in this case is whether a settlement agreement was consummated in their exchange of emails. The Court must determine whether Defendants agreed to the settlement and reneged, as Plaintiff contends, or whether Defendants' consent to the settlement agreement was contingent on their final review of the Third Revised Settlement Agreement, as Defendants contend.

" 'Because settlement agreements are a type of contract, the formation and enforceability of a purported settlement agreement are governed by state contract law.'" *Cuyahoga Valley Ry.*, 2013 WL 611369, at *3 (quoting *Smith v. ABN AMRO Mortg. Grp. Inc.*, 434 F. App'x 454, 460

(6th Cir.2011) (citation omitted)). The parties agree that Michigan law applies."Under Michigan law, construction of a contract is a legal question" where the terms of a contract are unambiguous. *Schwartz v. City of Detroit,* No. 05–74061, 2008 WL 4858416, at *3 (E.D.Mich. Nov.10, 2008); *Zurich Ins. Co. v. CCR & Co.,* 226 Mich.App. 599, 576 N.W.2d 392 (Mich.Ct.App.1997)."Settlement agreements are favored and discovering the parties' intent in forming the contract should be the goal of courts interpreting such agreements."*Schwartz,* 2008 WL 4858416, at *3 (citing *Eyde v. Eyde,* No. 243670, 2004 WL 1366007 (Mich.Ct.App. Jun.17, 2004) (unpublished opinion)).

" 'In order to form a valid contract, there must be a meeting of the minds on all the material facts. A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind.'"*Kamalnath v. Mercy Mem'l Hosp. Corp.,* 194 Mich.App. 543, 487 N.W.2d 499, 503 (Mich.Ct.App.1992) (citations omitted). In this case, an objective evaluation of counsel's email exchange indicates that after a full course of negotiations, the parties reached an agreement on May 31, 2012, as stated in defense counsel's final email that day.

First, there is no question that Attorney Olson represented Defendants UDH and Craig Manseth,[2] and sought a settlement of this lawsuit on their behalf, pursuant to her May 14, 2012 email to Attorney Rogers. From May 16, 2012 to May 21, 2012, the attorneys exchanged emails negotiating the terms and amount of settlement, with Rogers sending an email to Olson, with an attached, First Revised Settlement Agreement, and an eventual offer to settle for $4,925.00, which is not in dispute. The Initial Settlement Agreement and First Revised Settlement Agreement (Paragraph 2, last sentence), each required Defendants to provide Plaintiff with described documents pursuant to which Defendants sold the account and related debt, allegedly owed by Plaintiff.

*4 Plaintiff concisely sets forth the key email exchanges that followed. On May 22, 2012, Olson sent an email to Rogers, stating that she was recommending the settlement to Defendants. On May 25, 2012, Olson sent an email to Rogers, stating that "Clients are prepared to settle provided that the document production requirement is eliminated."On May 30, 2012, Olson sent another email to Rogers, again stating that Defendants were "fully prepared to settle" but that Defendants could not agree to the document production requirement because the documents contained a "confidentiality provision."

On May 30, 2012, Rogers sent an email to Olson, with an attached Second Revised Settlement Agreement, which deleted the document production requirement from Paragraph 2 as requested by Defendants and added language to Paragraph 4 by which Defendants represented that they had sold and retained no interest in the account and alleged debt. On May 30, 2012, Olson sent an email to Rogers, stating "I have forwarded the revised agreement to my client. I will call you in the morning to finalize."On May 31, 2012, Olson sent an email to Rogers, stating "Clients have confirmed that they have no current or ongoing interest in the Account consistent with my earlier representations. Note, however, that the subject purchase agreement contains a provision requiring 'ineligible accounts' to be repurchased by UDH upon demand."Accordingly, in her email, Olson proposed language to revise Paragraph 4 of the Second Revised Settlement Agreement to make clear that Defendants might be required to repurchase the account. The above-described revision to the Second Revised Settlement agreement was the only change to the agreement proposed by Olson after she stated in her May 30, 2012 email that she had forwarded the agreement to her clients and after she stated in her May 31, 2012 email that her "Clients have confirmed that they have no current or ongoing interest in the account ...."

On May 31, 2012, Rogers sent an email to Olson, with an attached Third Revised Settlement Agreement, and a revised Paragraph 4 that included every change proposed by Olson and her clients in Olson's email dated May 30, 2012. Rogers' email concluded, "I have included what you suggest, but I moved the sentence order some. If this is acceptable, we will have a deal and I will get it signed no later than tomorrow, so that we can keep on schedule for the payment delivery. Please advise."Olson sent an email back to Rogers on May 31, 2012, stating: "Agreed. That reads much better. I am sending this agreement to my clients right now. Thanks."

On May 31, 2012, Rogers sent another email to Olson, with an attached Third Revised Settlement Agreement signed by Plaintiff, stating: "Attached is the agreement signed this morning by plaintiff. Also attached is my office W–9. Thanks." Olson replied by email a few hours later, stating:

**"Thanks Phil. Client will be reviewing and executing in short order."**

*5 Judged by an objective standard, and looking to the express words of counsel's emails, there was a meeting of the minds on all material terms of the settlement. Although

Defendants rely heavily on the provision that Defendants would be "reviewing" the Third Revised Settlement Agreement as indicating that it was subject to review and no agreement was reached, Defendants' contention is contrary to the express language of the email. Attorney Olson's email affirmatively states that her client will be *executing* the agreement in short order. While the term reviewing can mean either a perfunctory or qualitative review, as Defendants argue, the term "executing" is unambiguous—indicating that an agreement was reached and the Third Revised Settlement Agreement would be signed by Defendants. Attorney Olson acted as Defendants' agent, with authority to bind defendants and settle this lawsuit on their behalf, and Defendants will be held to such agreement.[3]

### B. Enforceability

Defendants contend that even if an Agreement was reached, the Court should decline to enforce it because it was obtained improperly. Defendants assert that Plaintiff's counsel misrepresented the underlying facts of the settlement of the previous lawsuit, and "[i]t would be patently inequitable for the Court to enforce a purported settlement agreement that was premised and subsequently procured through false representations" (Defs. Resp., Dkt 32, at 11).

Defendants assert that "Plaintiff affirmatively represented, in her Complaint and throughout settlement negotiations in this matter, that a third party collection agency and outside collection attorney hired by UDH to collect the subject debt had expressly "represented to Plaintiff [in the context of Case No.: 1:11–cv–70] that Defendants would cease all efforts to collect the debt and that they would never sell or transfer the debt to any entity' " (Defs. Resp. at 10, citing Compl., Dkt 1, ¶ 22). And, despite these representations, "Plaintiff asserted that Defendants sold 'the account and related, alleged debt to Westwood, thereby violat[ing] the FDCPA and Michigan law' " (*id.*, citing Compl. ¶ 29). Defendants state that they have since obtained a true copy of the settlement agreement entered into in Case No. 1:11–cv–70, "which *seemingly* reveals that Plaintiff's prior representations regarding the agreement were false," in that Defendants did not agree to "never sell or transfer the debt to any entity" (*id.* at 11) (emphasis added). Defendants argue that while Plaintiff's counsel's inclusion of demonstrably false statements within the Complaint may have been an oversight, the Court should deny Plaintiff's motion to enforce the Settlement Agreement and instead proceed to determine Plaintiff's claims on the merits.

The Court finds Defendants' contentions concerning the equities and enforceability of the Agreement without merit. As Plaintiff points out, Defendants' assertions are specious given Defendant UDH's underlying involvement and relationship to both lawsuits: the defendants in the prior lawsuit were Attorney Powell and the collection firm hired by UDH to collect a debt owed to UDH by Plaintiff, all of whom are apparently closely connected.[4] Defendants' attempts to portray themselves as unwitting independent third parties in the underlying circumstances are hardly credible. Moreover, Defendants' weak argument that Plaintiff "seemingly" falsely represented that Defendants agreed to "never sell or transfer the debt to any entity" does not persuade the Court the equities favor Defendants or that Defendants are entitled to relief from the settlement of this litigation.

### IV. Conclusion

*6 "The power of a trial court to enter a judgment enforcing a settlement agreement has its basis in the policy favoring the settlement of disputes and the avoidance of costly and time-consuming litigation."*Kukla,* 483 F.2d at 621. The record clearly establishes that Plaintiff reached a settlement agreement with Defendants/Defendants' attorney. *See Remark, LLC v. Adell Broadcasting Corp.,* 702 F.3d 280, 283–84 (6th Cir.2012) (setting forth the circumstances that may be helpful in determining whether an enforceable contract has been concluded, notwithstanding the failure to execute a written document). Plaintiff is entitled to enforcement of the agreement reached.

An Order consistent with this Opinion will be entered.

### Footnotes

1   Plaintiff has filed a Statement of Material Facts (Dkt 26), to which Defendants have filed a Response (Dkt 32–1). Unless otherwise noted, citations to the SMF refer to the parties' combined statements.
2   According to the Complaint, Defendant UDH is owned, managed and operated by Defendant Manseth.

**Starr v. United Debt Holding, LLC, Slip Copy (2013)**

2013 WL 4041688

| | |
|---|---|
| 3 | Defendants do not dispute that Attorney Olson was authorized to represent them. |
| 4 | Defendants do not dispute the Complaint allegations that UDH purchased the payday loan debt at issue, hired a debt collector named Lighthouse Recovery Associates, LLC ("Lighthouse") and a debt collector named Powell Law Office, P.C. ('Powell") to collect the alleged debt from Plaintiff and that UDH, Lighthouse and Powell all operated from the same business suite in Centennial, Colorado (*see* Compl. ¶¶ 11–12). |

---

End of Document                                                                 © 2015 Thomson Reuters. No claim to original U.S. Government Works.