UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| FLOYD'S 99 HOLDINGS, LLC, a Colorado limited liability company, | ) Hon. Gerald E. Rosen<br>) Referred to Hon. Paul J. Komives |
| Plaintiffs, | ) |
| v. | ) |
| JUDE'S BARBERSHOP, INC., et al., | ) Case No.: 2:12-cv-14696-GER-PJK |
| Defendants. | ) |

PLAINTIFF FLOYD'S 99 HOLDINGS, LLC'S RESPONSE IN OPPOSITION
TO MOTION TO ENFORCE SETTLEMENT AGREEMENT

1

## ISSUES PRESENTED

1. Should this Court enforce the Settlement Agreement Points in the manner proposed by Jude's where doing so would impose a new condition outside the Settlement Agreement Points that requires Jude's to remove Floyd's trademarked distinctive poster wall from only one of Jude's walls?

    ANSWER: No.

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

Plaintiff adopts Defendant's Controlling Authorities.

## INTRODUCTION

This is a trademark infringement case between two chains of barbershops, Floyd's 99 Holdings, LLC ("Floyd's") and Jude's Barbershop, Inc., et al. ("Jude's"). Floyd's has barbershops throughout the United States and registered trademarks for the distinctive appearance of its barbershops, including its poster wall. Jude's is a chain of barbershops in Michigan that Jude's founder opened after he got a haircut at Floyd's. Floyd's initiated litigation against Jude's because it copied its poster wall and other elements of Floyd's trade dress.

During a settlement conference in this Court on September 11, 2014, the parties informally agreed on certain settlement terms that they stipulated would later form the basis of a formal, executed settlement agreement and license agreement. Four of the twelve terms in the "Settlement Agreement Points" specifically contemplate further, formalized, executed, documentation.

After the settlement conference, the parties engaged in two months of extensive negotiations regarding the material terms of these formalized documents. Finally, on December 9, 2014, the parties agreed to the terms of a license agreement and settlement agreement that incorporated the Settlement Agreement Points (the "December Agreement"). Jude's counsel accepted the same, proclaiming: *"I can't believe it – we have an agreement!"*

Jude's now asks this Court to ignore the parties' two months long

4

negotiation, the December Agreement, and its counsel's acceptance of the same, and enforce the Settlement Agreement Points but in a manner that directly contravenes its explicit terms and the parties' intent. Jude's Motion must be denied. To the extent the Court intends to enforce any agreement, it should enforce the December Settlement Agreement.

## ARGUMENT

Jude's correctly states in its Motion that this Court has the inherent power to enforce agreed upon settlement terms but only where "no substantial dispute exists regarding the entry into and terms of an agreement." *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001). Thus, "[b]efore enforcing a settlement, a district court must conclude that agreement has been reached on all material terms." *Id.* Jude's requested relief goes beyond enforcing the material terms in the Settlement Agreement Points and it ignores the very terms of the document it asks this Court to enforce. The Settlement Points Agreement, in its formalized form set forth in the December Agreement, reflects the mutual understanding of the parties with respect to the material terms of the parties' agreement. However, Jude's requested enforcement, limiting its obligation not to use the distinctive poster wall on only *a* wall, is not supported by any language of the Settlement Agreement Points, the intent of the agreement, and instead, contradicts the material terms of the parties' understanding. Therefore, Jude's

Motion must be denied.

## I. Jude's Requested Enforcement of the Settlement Agreement Points Must be Denied Because it Fundamentally Distorts the Understanding Between the Parties.

The Settlement Agreement Points condition any settlement between the parties, and the ultimate dismissal of this action, on two "formal," "executed" documents. Four of the twelve points express this requirement:

- "Jude's will ***execute*** a license for each of their 24 locations for one year, for $1,250.00 each, payable within 10 days of ***execution***."
- "Parties ***execute formal*** settlement agreement and license."
- "Case dismissed with prejudice following ***execution*** of documents and payments of money."
- "All documents ***drafted*** or ***executed*** in 3 weeks."

Defs.' Br. Ex. 2, ¶¶ 1, 6, 8, and 9. (emphasis added). The parties indisputably did not "execute" or "draft" a "formal settlement agreement" within 3 weeks. Nor have any "payments of money" occurred. Instead, the parties spent 2 months negotiating the terms for a formalized settlement agreement, ultimately agreeing to the December Agreement. If the Court were to enforce the Settlement Agreement Points as Jude's requests, the Court must ignore Jude's acceptance of the later December Agreement: ***"I can't believe it – we have an agreement!"***

Enforcing the Settlement Agreement Points (as suggested by Jude's) also requires the Court to ignore the very language it contains. For several reasons, the

6

plain language does not support Jude's position that it can retain its infringing poster walls on some (undescribed) number of barbershop walls. First, the parties could have (but did not) state that Jude's was only precluded from using the poster wall on one wall. Second, the parties could have (but did not) state that Jude's could continue to use Floyd's poster wall in its stores after the license period. Wouldn't this render the license agreement meaningless? Third, the Settlement Agreement Points require the "substitution of mural<u>s</u>" (plural) that would "not resemble the poster wall." Fourth, the parties' intent to prohibit Jude's from using *a* (*i.e.* "any") poster wall is set forth in the third term in the Settlement Agreement Points which states: "Jude's **will remove poster wall depictions** from online advertising…". Fifth, the Settlement Agreement Points clarify that any license to use the poster walls ***"will only be for in-store use within 6 weeks"***. Thus, the Settlement Agreement Points make clear that no use of a poster wall of any kind by Jude's online is permitted after 6 weeks and none of the terms *permit* the poster wall on select walls but not others. In other words, there is no language in the Settlement Agreement Points that explicitly or implicitly permits Jude's to use the poster wall *at all*, following the license period.

    Moreover, Jude's argument that the only poster wall it was required to remove are the ones located above the stainless steel sinks makes the agreement ambiguous. Because Jude's already removed any and all stainless steel sinks in its

shops, which poster wall was required to be replaced with a mural? And, if only the poster wall above those (non-existent) sinks needed to be converted to a mural, as Jude's argues, does that mean that no murals, contrary to the language of the Settlement Agreement Points, would actually be required?

As Jude's knows, Motion p. 12, the gravamen of the dispute between the parties is Jude's use of Floyd's distinctive poster wall, and the cessation of any use of the same by Jude's has always been a material prerequisite to any settlement between the parties.

Any settlement that does not require Jude's to remove Floyd's poster wall from its locations, is unenforceable and not supported by any agreement of the parties. Much to Jude's chagrin, even if this Court were to enforce the Settlement Agreement Points, the relief requested by Jude's in the "wherefore" clause of its brief, p. 16, such enforcement would never support its position that the parties agreed Jude's would only be required to remove the poster wall over its stainless steel sinks. Thus, Jude's Motion must be denied.

**II.     The December Agreement Constitutes a Binding Formal Settlement Agreement that Requires Jude's to Remove Poster walls from its Locations.**

Following the signing of the Settlement Agreement Points, counsel for both parties worked diligently to create the necessary formal agreements contemplated in it. On December 9, 2014, counsel for Jude's sent an e-mail indicating the deal

8

has finally been reached. Counsel for Jude's exclaimed **"I can't believe it – we have an agreement!"** Attached as **Exhibit A**. Jude's counsel then requested that Floyd's counsel send over the December Agreement and license agreement and he would "get it signed." *Id*. Counsel for Floyd's complied. *Id*. On December 15, 2014, counsel for Jude's sent an email stating, "[m]y client just got back in town, so I'm hoping to get you some autographs shortly." *Id*.

The Court should enforce the December Agreement because, as a matter of Michigan contract law, which governs the validity of settlement agreements, attorneys are considered to have the apparent authority to settle lawsuits on behalf of their clients, and opposing parties have the right to rely upon the existence of such settlements when agreed to by attorneys. *Accord Nelson v. Consumers Power Co.*, 497 N.W.2d 205, 208-09 (Mich. App. 1993).

Despite Jude's counsel's concurrence, after Floyd's counsel followed up regarding signatures, counsel for Jude's responded as follows on December 17: "See attached – they came in this morning. [my client] indicated he made a few small changes to the Settlement Agreement *to better specify the location of the poster wall*. I believe this is in Paragraph 2(b). ... Please let me know if you have any concerns with his amendments. I pray that we are there." *Id*. (emphasis added).

Jude's counsel's email makes two points clear. First, Jude's unilateral

9

change, to limit its obligation to change the poster wall to a mural wall only "on the wall directly above the stainless steel counter top and behind the mirrors of the haircutting stations and no other wall" was categorically ***not*** a term contemplated by the Settlement Agreement Points.  If it were, why would it need to be added now?  Second, the email's characterization of Jude's changes as "amendments" signifies that Jude's is proposing, but Floyd's has not agreed, to the proposed change regarding the single wall.  Jude's counsel expresses his own concerns about his client's "amendments" stating that he "pray[s] that we are there."  Thus, the parties plainly never agreed to limit the poster wall removal to the sole location proposed by Jude's.  To the extent any settlement agreement was reached or any agreement should be enforced by this Court, it is objectively the December Agreement.  (**Exhibit B** at ¶ 2(b))

     Jude's Motion also discusses an earlier draft agreement that Jude's unilaterally signed in November, 2014 but the parties' correspondence clarifies that Jude's signature exalts form over substance.  Simply put, it is clear there was no meeting of the minds.  For example, in Jude's November 21, 2014 email attaching the Jude's signed November agreement, Jude's counsel acknowledges it was not complete, and thus fatally flawed, because it "omits any reference to the license agreement."  Defs.' Br. Ex. 4 (emphasis added).  Indeed, counsel for Jude's invited counsel for Floyd's to "let me know your thoughts" and, to that end, the parties

10

continued to negotiate the terms of settlement for over another month. Thus, there is simply no basis for this Court to enforce the November draft against Floyd's.

## CONCLUSION

In the Settlement Agreement Points, the parties agreed to execute a license agreement and formal settlement document to include material terms such as Jude's removal of the poster wall from its locations. Jude's now asks the Court to impose a significant and material limitation on this requirement that is not supported (and indeed contradicted by) the Settlement Agreement Points. Through this Motion, Jude's seeks to force Floyd's to accept a deal that was never discussed, considered or agreed to and runs contrary to the rights of distinctive trade dress which Floyd's asserts in this lawsuit. For these reasons, the Court must deny the relief requested by Jude's in its Motion.

To the extent the Court enforces a settlement agreement, the December Agreement, which Jude's counsel accepted, exclaiming "we have an agreement!", should be enforced. Furthermore, Floyd's asks this court for an award of its attorney's fees and costs incurred in connection with this Motion because the Motion is belied by the very facts cited and documents and correspondence Jude's attaches to the same.

SIGNED this 4th day of March, 2015.

        Respectfully submitted,

        *s/ William F. Jones*
        William F. Jones CO #35294
        Elizabeth H. Getches #34898
        Moye White LLP
        16 Market Square, 6th Floor
        1400 Sixteenth Street
        Denver Colorado 80202-1486
        Telephone: 303 292 2900
        FAX: (303) 292-4510
        billy.jones@moyewhite.com

        Homayune A. Ghaussi
        Warner Norcross & Judd LLP
        2000 Town Center, Suite 2700
        Southfield, MI 48075
        Telephone (248) 784-5139
        hghaussi@wnj.com

        *ATTORNEYS FOR DEFENDANTS*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 4, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

| | |
|---|---|
| James A. Jablonksi<br>Law Offices of James A. Jablonski<br>1801 Broadway, Suite 1100<br>Denver, CO 80202<br>jim@jablonski-law.com | Timothy F. Casey<br>Julie E. Nichols<br>Collins Einhorn Farrell<br>4000 Town Center, Suite 909<br>Southfield, MI 48075-1473<br>Timothy.casey@ceflawyers.com<br>Julie.Nichols@ceflawyers.com |
| *Attorneys for Defendants* | *Attorneys for Defendants* |

                                                   *s/ Deanna S. Colvin*