# EXHIBIT A

2:12-cv-14696-GER-PJK   Doc # 52-2   Filed 03/11/15   Pg 1 of 17   Pg ID 539

2015 WL 401018
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

Donald C. BURNIAC, Plaintiff,
v.
WELLS FARGO BANK, N.A., et al., Defendants.

No. 13–CV–12741.   |   Signed Jan. 28, 2015.

**Attorneys and Law Firms**

Donald C. Burniac, pro se.

Patrick C. Lannen, Plunkett Cooney, Bloomfield Hills, MI, for Defendants.

*OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt.17)*

MARK A. GOLDSMITH, District Judge.

### I. INTRODUCTION

*1 Before the Court in this foreclosure matter is Defendant Wells Fargo Bank, N.A.'s motion for summary judgment (Dkt.17). Defendant argues that Plaintiff Donald Burniac's thirteen-count Complaint is subject to dismissal, and Wells Fargo is entitled to judgment as a matter of law, because Plaintiff has failed to raise a genuine issue of material fact regarding any of his claims. Plaintiff filed a response (Dkt.22), and Defendant filed a reply (Dkt.24). The Court determined that oral argument would not assist with resolution of Defendant's motion. *See* 11/18/14 Order (Dkt.26).

Having reviewed Plaintiff's Complaint, the parties' briefing, and the relevant authority, the Court concludes that Plaintiff's claims are not sustainable. Accordingly, for the reasons set forth below, the Court grants Defendant's motion.

### II. BACKGROUND

In 2003, Plaintiff executed a note and mortgage with Washington Mutual Bank ("WaMU") for the purchase of his residence; the mortgage was recorded on February 25, 2003. Compl. ¶ 9. Plaintiff claims the mortgage loan was pooled, i.e., securitized, with a number of other mortgage loans, although he provides no evidence that his specific mortgage loan was actually pooled; Defendant Wells Fargo claims it was not.

Wells Fargo began servicing the loan in February 2007. *See* 2/26/12 Letter (Dkt. 1–1 (97 of 121 (cm/ecf page)). In March 2007, the mortgage was assigned from WaMu to Wells Fargo. *See* Assignment (Dkt.17–5). The assignment is signed by Mary Jo McGowan—a purported Assistant Vice President of WaMu—and notarized by Maria Leonor Gerholdt. *Id.* Plaintiff claims this assignment was fraudulently executed by Nationwide Title Clearing ("NTC"), a "now disgraced robo-signing, forgery, and mortgage document fraud mill." Compl. ¶¶ 13–15. Plaintiff alleges these signatures were false or done without the signer's personal knowledge. *Id.* ¶¶ 19–21. In the alternative, Plaintiff asserts that NTC did not have WaMu's authority to execute the assignment. *Id.* ¶ 22. Plaintiff claims the assignment was, thus, invalid and void.

The assignment was recorded shortly after its execution. *See* Assignment. In September 2008, WaMu filed for Chapter 11 bankruptcy. Compl. ¶ 27.

Plaintiff alleges that Wells Fargo told him that it would modify his loan, but only if he fell behind in his payments. *Id.* ¶ 44. Plaintiff claims Wells Fargo then put him through "Paperwork Hell," where it would continuously request documents from him, and then claim to have never received the documents. *Id.* ¶¶ 49–50. Wells Fargo ultimately denied Plaintiff's request for a modification. *Id.* ¶ 56.

Defendant—via counsel—then sent Plaintiff a notice pursuant to Mich. Comp. Laws § 600.3205a, inviting him to participate in the pre-foreclosure statutory modification process. *See* Notice (Dkt.17–6). In his Complaint, Plaintiff claims that he "contacted the foreclosing law firm [ ] within the requisite time-frame," but that Defendant scheduled the sheriff's sale instead of holding a meeting. *Id.* ¶¶ 58–60. Defendant has attached an affidavit to its motion stating that Plaintiff never requested the required loan modification meeting in response to the notice. Affidavit of Ebony Gerwin ("Gerwin Aff.") (Dkt.17–7).

*2 Defendant then scheduled a sheriff's sale for the property. Compl. ¶ 61. The record suggests this case was filed before the sale commenced.

Plaintiff also includes in his Complaint scattered and vague allegations of harassing collection calls; wrongful assessment of monthly late fees; misappropriating funds paid by Plaintiff; not paying insurance premiums; and failing to properly credit his account for payments made. *Id.* ¶¶ 63–65, 134.

Plaintiff's Complaint contains thirteen causes of action:

(1) Declaratory judgment that Defendant violated Mich. Comp. Laws §§ 600.3204(1) and (3);

(2) Declaratory judgment that Defendant violated Mich. Comp. Laws §§ 600.3204(4), .3205a, and .3205c;

(3) Breach of the mortgage contract;

(4) Intentional fraud;

(5) Constructive fraud;

(6) Tortious interference with contractual relations;

(7) Civil conspiracy;

(8) Violation of Michigan's Regulation of Collection Practices Act;

(9) Violation of Michigan's Occupational Code;

(10) Accounting;

(11) Breach of contract of the implied duty of good faith and fair dealing;

(12) Declaratory judgment regarding whether Defendant violated federal regulations; and

(13) Quiet title.

### III. SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). When a defendant seeks summary judgment, the defendant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quotation marks omitted). "[A] plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment ... as long as the plaintiff has had a full opportunity to conduct discovery." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When evaluating the evidence, courts draw all inferences in favor of the non-moving party. *Warf v. United States Dep't of Veterans Affairs,* 713 F.3d 874, 877 (6th Cir.2013).

In response to Defendant's motion, Plaintiff offers no new evidence or testimony revealed through the discovery process. Rather, he relies exclusively on the same documents attached to his Complaint, as well as the allegations within the Complaint itself. However, with respect to his allegations, to "defeat a motion for summary judgment[,] a plaintiff can no longer rely on the conclusory allegations of its complaint." *Id.* at 878 (quotation marks omitted).

The one exception to this rule is that a verified complaint that is signed "under penalty of perjury pursuant to 28 U.S.C. § 1746 ... carries the same weight as would an affidavit for purposes of summary judgment." *El Bey v. Roop,* 530 F.3d 407, 414 (6th Cir.2008). Nevertheless, "[a]lthough statements in a verified complaint may function as the equivalent of affidavit statements for purposes of summary judgment, ... affidavit statements must be based on personal knowledge." *Weberg v. Franks,* 229 F.3d 514, 526 n. 13 (6th Cir.2000) (citation omitted). To the extent the allegations are not based on personal knowledge, they may be disregarded for purposes of summary judgment. *Id.* Furthermore, "[c]onclusory assertions, ... even those advanced in the form of a verified complaint, are not sufficient to show a genuine issue of fact necessary for the denial of summary judgment." *Lee v. Hill,* No. 12–cv–10486, 2013 WL 5179059, at *4 (E.D.Mich. Sept.12, 2013) (quotation marks omitted).

*3 Although Plaintiff generally "swear[s] or affirm[s] that the ... allegations [in his Complaint] are true to the best of [his] knowledge, information, and belief," Compl. at 43, Plaintiff does not differentiate between those allegations that are based on his knowledge and those that are based on his belief, nor does he expressly swear to the allegations "under penalty of perjury." Therefore, the allegations in Plaintiff's Complaint alone are insufficient for purposes of defeating summary judgment. *See Totman v. Louisville Jefferson Cnty. Metro Gov't,* 391 F. App'x 454, 464 (6th

Cir.2010) (holding that a similar statement in a complaint "indicates that the allegations of the complaint go beyond [the plaintiff's] personal knowledge and extend to matters within [his] beliefs. His beliefs, however, do not meet the evidentiary standard set forth in Rule 56[ (c)(4) ] of the Federal Rules of Civil Procedure."); *see also Cruse v. Wayne,* 12–cv–479, 2014 WL 713001, at *4 n. 3 (W.D.Mich. Feb.25, 2014) (citing *Tenneco Auto. Operating Co., Inc. v. Kingdom Auto Parts,* 410 F. App'x 841, 848 (6th Cir.2010) (court did not abuse its discretion in disregarding unsworn declarations, because the declarations were not made under penalty of perjury and did "not specify which statements were made under information and belief and which were made from personal knowledge")).

## IV. ANALYSIS

### A. Local Rule 7.1(a) Concurrence Requirement

In his response to Defendant's motion for summary judgment, Plaintiff requests that the Court strike Defendant's motion. Plaintiff claims that Defendant never sought concurrence in the motion, as required by Eastern District of Michigan Local Rule 7.1(a) and the Court's practice guidelines. Pl. Resp. at 10–14. Plaintiff claims Defendant's statement of concurrence is untrue, and that Defendant's counsel refused to respond to Plaintiff's requests for updates on his loan modification request. *Id.* Defendant disputes this claim, stating that it discussed the motion during conferences with the Court and in "several conversations and exchanges" with Plaintiff's counsel. Def. Reply at 1–2 (Dkt.24).

The Court need not resolve this factual dispute, however, because it finds this argument unavailing for two reasons. First, the goal of the concurrence requirement is to avoid the needless spending of time and resources by the parties and the Court on motions to which there is actually agreement in the relief sought. It is clear from Plaintiff's response to Defendant's motion, however, that he does not concur in the motion. Further, Plaintiff has failed to identify how he was legally harmed or prejudiced by the purported failure to seek concurrence. Therefore, the Court declines to punish Defendant based on the purported failure to seek concurrence.

Second, Plaintiff's request to strike Defendant's motion based on the alleged failure to seek concurrence is procedurally deficient. Federal Rule of Civil Procedure 7(b) requires that "[a] request for a court order must be made by motion." Here, Plaintiff's request to strike was not made by motion, but rather through argument contained in his response to Defendant's motion. This is improper. *See James v. Fed. Home Loan Mortg. Corp.,* No. 13–13029, 2014 WL 4773648, at *16 n. 10 (E.D.Mich. Sept.24, 2014) (denying request for leave to amend that was raised in a response brief); E.D. Mich. Local Rule App'x ECF, R5(e) ("[A] response or reply to a motion must not be combined with a counter-motion."); *see also Ioselev v. Schilling,* No. 10–1091, 2013 WL 271711, at *5 n. 8 (M.D.Fla. Jan.24, 2013) (denying request to strike affidavits because "including this request for affirmative relief in their response to Plaintiff's Motion rather than filing a separate motion is improper").

*4 Therefore, the Court denies Plaintiff's request to strike Defendant's motion based on Defendant's alleged failure to seek concurrence.

### B. The Unknown Defendants

Plaintiff originally brought this action against three Defendants: (i) Wells Fargo Bank, N.A.; (ii) "Unknown Trustee, as Trustee on behalf of the asset-backed security in which the loan at issue was pooled;" and (iii) "Unknown Trust, the unknown asset-backed security at issue." Compl. (Dkt.1–1). The two unknown Defendants were included based on Plaintiff's belief that his mortgage loan was securitized, Compl. ¶ 11, a fact Wells Fargo disputes, *see* Def. Resp. to Mot. to Remand at 2–3 (Dkt.6).

After the parties were unsuccessful in their attempt to resolve this matter, the Court issued a Case Management and Scheduling Order granting the parties until July 31, 2014 to complete discovery. *See* CMO (Dkt.9). Despite the close of discovery, however, Plaintiff still has not identified the unknown Defendants with any particularity. Plaintiff has not sought to amend the case caption to name these Defendants, nor does he even identify these Defendants in his response to Defendant's motion for summary judgment. Wells Fargo, on the other hand, continues to assert that no such entities exist. *See* Def. Br. at 21 (Dkt.17) ("The terms are made-up attorney rhetoric and ... Defendant did not and could not have any 'agreement' with any such fictitious 'Trust' or 'Trustee.' ").

Trial and liability against these unknown Defendants would not be possible without their identification. Accordingly, given that the discovery and dispositive-motion deadline have now passed without Plaintiff identifying these Defendants, the Court dismisses the claims against them. *See Anderson v. Bank of Am., N.A.,* No. 13–12834, 2013 WL 5770507, at *1 n. 2 (E.D.Mich. Oct.24, 2013) ("Although

Plaintiff names an Unknown Trustee and Unknown Trust as Defendants, there is no trust or trustee that has an interest in the mortgage loan at issue here. Therefore, the claims against the Unknown Trustee and Unknown Trust are DISMISSED.").

### C. Abandoned Claims

Wells Fargo seeks summary judgment on all counts contained within Plaintiff's Complaint. Plaintiff responded to Defendant's **motion**, explaining why he believes some of the counts should not be subject to summary judgment. However, Plaintiff did not respond to Defendant's dispositive arguments regarding five causes of action: (i) tortious interference with contractual relations (count six); (ii) Michigan's occupational code (count nine); (iii) accounting (count ten); (iv) failure to comply with condition precedent under code of federal regulations (count twelve); and (v) quiet title (count thirteen).

The Court deems Plaintiff's failure to address Defendant's dispositive arguments regarding these claims as abandonment of these causes of action. *See Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir.2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in **response** to a **motion** for summary judgment.").

*5 Furthermore, the Court has reviewed the claims, Defendant's arguments, and numerous cases addressing these exact same claims raised by Plaintiff's counsel. *See, e.g., Anderson,* 2013 WL 5770507, at *1–6; *Goodwin v. CitiMortgage, Inc.,* No. 12–760, 2013 WL 4499003, at *1–8 (W.D.Mich. Aug.19, 2013); *McDonald v. Green Tree Servicing, LLC,* No. 13–12993, 2014 WL 1260708, at *3–8 (E.D.Mich. Mar.27, 2014). Even if the Court was to conclude that Plaintiff had not abandoned these claims, they would be subject to dismissal on their merits in any event.

Therefore, the Court dismisses these causes of action with prejudice.

### D. Count One: Mich. Comp. Laws §§ 600.3204(1), (3)

Plaintiff's first claim is entitled "declaratory relief that the foreclosure violates MCL 600.3204(1) & (3)." Compl. ¶ 68–107. Although entitled a claim for "declaratory relief," Plaintiff also seeks a temporary restraining order, a preliminary injunction, damages, and costs and fees. *Id.* ¶ 107.

Plaintiff's claim is based on a purportedly invalid assignment from WaMu to Defendant Wells Fargo via NTC. Plaintiff claims that the signatures on the assignment were forged or done without knowledge, and thus the assignment is invalid. *Id.* ¶ 83–85, 91–97. Plaintiff refers to this practice as "robosigning." *Id.* ¶ 13. Plaintiff also asserts that, even if the signatures were not forged, NTC did not have the authority to execute the assignment on behalf of WaMu or the purported unknown Trust. *Id.* ¶¶ 22, 86–88. Plaintiff further claims that there were issues with the purported transfer of the mortgage loan for pooling, and that "none of the Defendants, nor any other person or entity has the authority to foreclose upon the [p]roperty." *Id.* ¶¶ 99, 103.

Defendant first argues that this claim is subject to dismissal because Plaintiff has not introduced evidence of the purported violations. Def. Br. at 5–7. Defendant maintains that Plaintiff has failed to buttress his assertion that NTC did not have the authority to execute the document on WaMu's behalf, nor has Plaintiff shown that a genuine issue of material fact exists that the signatures were falsified. *Id.*

Defendant also claims that Plaintiff does not have standing to raise this claim—even if there was an error in the assignment—because he has not shown prejudice from the error. *Id.* at 7–12. Defendant notes that Plaintiff does not claim that some other entity exists to challenge Defendant's ownership status, nor does Plaintiff allege that some entity other than Defendant has sought to enforce or threatened to enforce the note or mortgage. *Id.* at 10–11.

Plaintiff responds that a document executed by forgery is null and void, and, therefore, the assignment is invalid. Pl. Resp. at 15. Plaintiff also argues that he has standing to raise such a claim. *Id.* at 15–16. Plaintiff does not directly respond to Defendant's argument regarding a threat of double recovery.

*6 This Court recently addressed the issue of a borrower's standing to challenge assignments in *Etts v. Deutsche Bank National Trust Company,* No. 13–11588, 2014 WL 645358, at *6–8 (E.D.Mich. Feb. 19, 2014). In that case, the plaintiff alleged the assignment was invalid because the assignor purportedly did not hold the note and/or mortgage at the time of the assignment due to a bankruptcy. Quoting *Livonia Properties Holdings, LLC v. 12840–12976 Farmington Road Holdings, LLC,* 399 F. App'x 97, 99 (6th Cir.2010), this Court explained that there is " 'ample authority to support the proposition that a litigant who is not a party to an assignment lacks standing to challenge that assignment.' " *Id.*

This Court did clarify, however, that there is an exception to this rule if the obligor asserts a defense to foreclosure that "renders the assignment absolutely invalid or ineffective, or void.... These defenses **include** nonassignability of the instrument, assignee's lack of title, and a prior revocation of the assignment." *Id.* (quotation marks omitted).

This Court also explained the reason behind granting these exceptions; they exist to allow the borrower to protect himself or herself from having to pay the same debt twice. Therefore, "[w]ithout a genuine claim that [a foreclosing defendant] is not the rightful owner of the loan and that [a plaintiff] might therefore be subject to double liability on its debt, [a plaintiff] cannot credibly claim to have standing to challenge" the assignment. *Id.* (alterations in original) (quotation marks omitted). Recent Michigan case law similarly requires a plaintiff to show prejudice to sustain a cause of action under Michigan's foreclosure statutes, *i.e.*, that he or she would have been in a better position to preserve his or her interest in the home absent the purported defect. *See Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98, 825 N.W.2d 329, 337 (Mich.2012).

With respect to Plaintiff's allegations based on purported defects with the assignment, the Court finds that this claim is deficient. Plaintiff argues that the assignment was "robo-signed," i.e., fraudulent and/or done without the assignor's authority. In support of this claim, Plaintiff attaches to his Complaint: (i) the assignment (Dkt. 1–1 (77 cm/ecf page)); (ii) articles and blog posts about state attorneys general investigating companies for robo-signing (Dkt. 1–1 (79–84 cm/ecf pages)); (iii) other documents purportedly signed by the NTC signers, which purportedly reveal different signatures (Dkt. 1–1 (86–91 cm/ecf pages)); and (iv) an article suggesting that some signers at NTC may not understand assignments (Dkt. 1–1 (93–95 cm/ecf pages)). These documents fail to raise a genuine issue of material fact that Plaintiff's instruments, in particular, were subject to false signatures. Nor has Plaintiff introduced evidence to support his claim that NTC lacked authority to effectuate the assignment on behalf of WaMu. Nevertheless, even if such evidence existed, this claim would fail.

*7 Numerous courts, **including** the Sixth Circuit, have concluded that similar allegations of robo-signing, if true, would result in the action being voidable, not void. *See Connolly v. Deutsche Bank Nat'l Trust Co.*, 581 F. App'x 500, 507 (6th Cir.2014) (in discussing robo-signing allegations, noting that "the plaintiff was a third party to the assignments and could only prove that any defect was merely voidable"); *Ross v. Wells Fargo Bank, N.A.*, No. 14–627, 2014 WL 5390659, at *5 (W.D.Mich. Oct. 22, 2014) (collecting cases, and rejecting the argument that the "assignments are invalid because they were robo-signed and thus fraudulent," because this "is not one of the defenses permitted by *Livonia*, and thus, [the plaintiffs] lack standing to challenge the assignment"); *see also Maraulo v. CitiMortgage, Inc.*, No. 12–10250, 2013 WL 530944, at *5–8 (E.D.Mich. Feb.11, 2013) (Goldsmith, J.) (dismissing same claim of robo-signing under Livonia Properties).

Furthermore, Plaintiff has failed to sufficiently allege or show the threat of double recovery required to sustain such a cause of action. In *Conlin v. Mortgage Electronic Registration Systems, Inc.*, 714 F.3d 355, 361–362 (6th Cir.2013), the Sixth Circuit examined a similar claim of a purportedly invalid assignment due to "robo-signing." Citing, in part, *Livonia Properties*, the Sixth Circuit explained that, "[p]ost-Kim, Michigan mortgagors seeking to set aside a sheriff's sale under § 600.3204 will have to demonstrate prejudice (e.g., double liability)." The Sixth Circuit ultimately concluded that dismissal of the plaintiff's claim was appropriate because,

> [e]ven were the assignment from MERS to U.S. Bank invalid, thereby creating a defect in the foreclosure process under § 600.3204(1)(d), Plaintiff has not shown that he was prejudiced. He has not shown that he will be subject to double liability from anyone other than U.S. Bank; he has not shown that he would have been in any better position to keep the property absent the defect; and he has not shown that he has been prejudiced in any other way.

*Id.* at 362.

Plaintiff's claim suffers from the same defect. Plaintiff broadly alleges in his Complaint that he "fears double recovery." Compl. ¶ 105. However, on summary judgment, Plaintiff has failed to attest to this fear or explain why it is valid. Plaintiff has introduced no evidence that his mortgage and note have been severed. Nor does Plaintiff sufficiently explain in either his Complaint or his **response** to Defendant's **motion** (i) why he fears double recovery, (ii) which entities have sought or likely will seek to enforce the note or mortgage other than Defendant, or (iii) whether any such action has

been taken. Plaintiff does not allege that WaMu—nor any other entity other than Wells Fargo—has demanded payment from him based on the purportedly fraudulent nature of the assignment. To the contrary, Plaintiff acknowledges that WaMu filed for Chapter 11 bankruptcy in 2008, Compl. ¶ 27, and Plaintiff has not identified any entity other than Wells Fargo that may own the note and/or mortgage. Further, Plaintiff has not explained, nor even alleged, how he would have been in a better position to preserve his interest in the property but for the purportedly fraudulent assignment.[1]

*8 Numerous courts have concluded that similar conclusory allegations of a "fear[ of] double recovery" are deficient. *See, e.g., Ross,* 2014 WL 5390659, at *5; *Griffin v. JPMorgan Chase, Bank, N.A.,* No. 13–10002, 2013 WL 6587870, at *4 n. 8 (E.D.Mich. Dec. 16, 2013) ("Plaintiffs' general assertion that they 'fear double recovery' ... and thus fit within the exception to the general rule ... is not sufficiently pled."); *Stroud v. Bank of Am., N.A.,* No. 13–10334, 2013 WL 3582363, at *7 (E.D.Mich. July 12, 2013) ("Plaintiff does not substantiate this fear by, for example, alleging that a second entity is attempting to collect on the underlying debt. That Plaintiff is fearful of double liability does not make the risk of such liability plausible, particularly in light of Plaintiff's acknowledgement that First Street (the original mortgagee) has dissolved ...."); *Goodwin,* 2013 WL 4499003, at *2 n. 1 ("While a 'genuine claim' that a plaintiff might be subject to double recovery can provide that plaintiff with standing to challenge an assignment between two third-parties, ... this bald assertion [of a fear of possible double recovery] is not such a genuine claim; Plaintiff has not put forth a plausible argument that a party other than CMI also claims rightful ownership of the mortgage."); *Maraulo,* 2013 WL 530944, at *7 (rejecting same argument of robo-signing because "none of the facts alleged indicate that the assignment may subject Plaintiffs to a risk of having to pay their mortgage twice. In fact, Plaintiffs' complaint alleges that the assignor of the mortgage, American, went out of business in 2008 and ceased to exist as a corporate entity."). The Court agrees with these decisions.

To the extent Plaintiff's allegations are based on purported issues with the alleged securitization, the Court first notes that Plaintiff does not have standing to raise such a claim. *See Smith v. Litton Loan Servicing, LP,* 517 F. App'x 395, 397–398 (6th Cir.2013) ("Smith was neither a party nor a third-party beneficiary to the Pooling and Servicing Agreement, so even if its terms were violated, Smith may not challenge compliance with the Pooling and Servicing Agreement.").

Nevertheless, even if he did have standing, Plaintiff has not raised a genuine issue of material fact with respect to this claim. The only evidence Plaintiff introduces of securitization are (i) Form 8–Ks referencing pooling and servicing agreements (PSAs) from February and April 2003 (Dkt. 1-1 (65–68 cm/ecf pages)), and (ii) images of various websites describing mortgage-backed securities (Dkt. 1-1 (70–75 cm/ecf pages)). However, Plaintiff has not shown that his mortgage loan in particular was securitized and/or part of the described PSAs, and Wells Fargo expressly claims that it was not. Def. Resp. to **Mot.** to Remand at 2 ("A cursory review of the chain of title to the Property shows that the Mortgage was never pooled."); *see also* 2/26/12 Letter (Dkt. 1-1 (97 of 121 (cm/ecf page))) ("Please be advised that [Wells Fargo] does not disburse original documents. However, [Wells Fargo] does have a valid loan and lien on this property.").

*9 Moreover, Plaintiff alleges that the PSAs "absolutely require[ ] the transfer of the Mortgage and Note to be done in a specified way, within a specified time frame, i.e., one year, which was not done in this case." Compl. ¶ 99. However, Plaintiff fails to explain precisely with which portion of the PSA the purported securitization failed to comply— the timing or some other requirement. Therefore, the Court rejects this claim as deficient as well.

Accordingly, the Court dismisses Plaintiff's claim for "declaratory relief that the foreclosure violates MCL 600.3204(1) & (3)" (count one).

### E. Count Two: Mich. Comp. Laws §§ 600.3204(4), 600.3205a, and 600.3205c

Plaintiff alleges that Defendant violated Mich. Comp. Laws §§ 600 .3204(4), 600.3205a, and 600.3205c when it initiated foreclosure proceedings while a loan modification request was under review. Plaintiff claims that "Defendants were absolutely required to permit Plaintiff to participate in the statutory modification process, to lock in a 90 day freeze on foreclosures, and to refrain from conducting a sheriff's sale if Plaintiff qualified for modification." Compl. ¶ 112. According to Plaintiff, "although [he] contacted the foreclosing law firm prior to the deadline, and informed a representative that he wished to participate in the statutory modification process, the firm illegally informed Plaintiff that he was required to deal directly with the Servicer, and Defendants rushed to sheriff's sale prior to the expiration of Plaintiff's rights under MCL 600.3205 *et seq.*" *Id.* ¶ 113.

Defendant argues this claim is subject to dismissal because Plaintiff did not request a timely meeting in **response** to the Notice of Modification Opportunity, as required by statute. Def. Br. at 12–13. In support of this argument, Defendant attaches to its **motion** an affidavit by Ebony Gerwin—an attorney at Trott & Trott, P.C.,—who states that Trott & Trott, on behalf of Wells Fargo, sent the written notice required by Mich. Comp. Laws §§ 600.3204 and .3205a-e to Plaintiff, but that "Plaintiff failed to ever request a meeting under the Notice in connection with Mich. Comp. Laws § 600.3205b." Gerwin Aff. (Dkt.17–7).

Plaintiff responds that he has alleged in his Complaint that he requested the meeting "prior to the deadline," and that this raises a genuine issue of material fact precluding dismissal. Pl. Resp. at 16–18. The Court disagrees.

Plaintiff concedes that Defendant, via Trott & Trott, sent the required loan modification notice in March 2013. However, the parties dispute whether Plaintiff requested a meeting pursuant to that notice, as required to trigger the statutory protections. Pl. Resp. at 17. Plaintiff, via his Complaint, suggests that he did so; Defendant, via an affidavit provided by Gerwin, claims he did not.

"The Sixth Circuit has held that a plaintiff's bare assertion that he requested a meeting with the foreclosing party's representative, as required by [Mich. Comp. Laws] § 600.3205b to trigger the mortgagee's duty to engage in loan modification negotiations, is insufficient to satisfy the T [w]ombly/Iqbal pleading standard." *See Ross*, 2014 WL 5390659, at *5 (dismissing same claim brought by the same plaintiff's counsel) (citing *Farnsworth v. Nationstar Mortg., LLC*, 569 F. App'x 421, 429 (6th Cir.2014)). As explained by the Sixth Circuit in *Farnsworth*, a "bare allegation that [the plaintiff] satisfactorily requested a meeting under Mich. Comp. Laws § 3205b, unsupported by any additional facts, is just the sort of conclusory allegation that is insufficient to survive a **motion** to dismiss." *Farnsworth*, 569 F. App'x at 429; *see also Thill v. Ocwen Loan Servicing, LLC*, 8 F.Supp.3d 950, 953–954 (E.D.Mich.2014) (collecting cases, and concluding that "Plaintiff has not, for example, alleged when ... he contacted Defendant's designee or a housing counselor within the 30 day period. Simply articulating that Plaintiff complied with the statutory requirements and Defendants did not are legal conclusions that fall well short of *Twombly/Iqbal* .... Accordingly, this Court now joins ... the numerous other courts that have rejected nearly identical loan modification claims filed by Gantz Associates."); *Hiller v. HSBC Fin. Corp.*, No. 13–12177, 2014 WL 656258, at *6 (E.D.Mich. Feb.20, 2014) ("As it is clear that the relevant statutory provisions provide meticulous directions for all partie[s] involved in a foreclosure, absent more specific allegations the Court is left with pure conjecture, which is not sufficient.").

*10 Here, Plaintiff has alleged that he "contacted the foreclosing law firm prior to the deadline, and informed a representative that he wished to participate in the statutory modification process." Compl. ¶ 113. Plaintiff does not specify when he made such a request, the means with which he did so (i.e., telephonically, e-mail, mail), and/or whether he personally made the request or did so through counsel. Nor does Plaintiff expand on his allegations to provide this sort of detailed information in **response** to Defendant's **motion** for summary judgment. As numerous courts have explained, these barebone allegations are insufficient to withstand a **motion** to dismiss, let alone one for summary judgment. Indeed, Plaintiff's failure to provide more details regarding the timing of his purported request is particularly worrisome in light of the fact that at least two courts in this District have concluded that Plaintiff's counsel appears to misunderstand (at best) or intentionally misstate (at worst) the timing requirements set forth in Mich. Comp. Laws §§ 600.3205b and 3205c. *See Hewitt v. Bank of Am.*, No. 13–310, 2013 WL 3490668, at *8–9 (W.D.Mich. July 11, 2013) (noting that "Plaintiff selectively quotes from the foreclosure statutes to imply that he had 90 days to contact the designated entity to request a loan modification"); *Thill*, 8 F.Supp.3d at 953–954 (finding that Plaintiff's counsel's suggestion regarding the 90–day period is a "blanket misstatement of law and unfortunately is not an isolated incident").

Furthermore, the only evidence that Plaintiff cites to in support of his claim that he actually made such a request is his Complaint. *See* Pl. Resp. at 17. But as described above, Plaintiff's Complaint cannot serve as an affidavit because it is based on his "knowledge, information, and belief," without distinguishing which allegations are based on his knowledge and which are based on belief. *See* Compl. at 43; *see also Totman v. Louisville Jefferson Cnty. Metro Gov't*, 391 F. App'x 454, 464 (6th Cir.2010). Moreover, Plaintiff's Complaint was not sworn to under penalty of perjury. *See* 28 U.S.C. § 1746; *Tenneco Auto. Operating Co., Inc. v. Kingdom Auto Parts*, 410 F. App'x 841, 848 (6th Cir.2010). Plaintiff has not provided any further evidence that he requested such a meeting, **including** a competing affidavit or declaration

sworn to under penalty of perjury stating that he did so. Therefore, Plaintiff has not introduced sufficient evidence to create a genuine issue of material fact in light of Gerwin's affidavit attesting that Plaintiff did not request such a meeting. *See McDonald*, 2014 WL 1260708, at *4–5 (allegation of requesting a meeting in "verified complaint" insufficient to create genuine issue of material fact, because complaint was not signed "under penalty of perjury," as required by 28 U.S.C. § 1746 and *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir.2008)).

Accordingly, the Court dismisses Plaintiff's claim based on Michigan's loan modification statutes (count two).

### F. Count Three: Breach of Contract

*11 Plaintiff next raises a claim for breach of contract based on paragraphs 1 through 5 of the mortgage. According to Plaintiff, these paragraphs "set forth the manner in which Defendants were authorized by contract to bill Plaintiff for principal, interest, taxes, and insurance, to utilize his funds to pay the taxes and insurance, and to credit his account accordingly." Compl. ¶ 136. Plaintiff alleges that Defendant "breached these requirements of the contract, by failing to credit Plaintiff for payments made, by overcharging Plaintiff for taxes and/or insurance, by collecting funds from Plaintiff to pay insurance but failing to actually pay the same, and by foreclosing instead of cleaning up their own mistakes and/or intentional misconduct aimed at getting their hands on a bailout of [sic] otherwise by cashing in on a mortgage insurance policy." *Id.* ¶ 134.

Defendant argues that this claim is subject to dismissal because Plaintiff has not identified, much less shown a genuine issue of material fact regarding, any breach. Def. Br. at 14–15. Defendant maintains that Plaintiff has not identified any specific instance of improper conduct or error in the crediting of payments, or any inaccuracy in the Customer Account Activity statement that Defendant provided to Plaintiff reflecting his payment history. *Id.*

Plaintiff, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), responds that he has sufficiently alleged a claim for breach of contract because his allegations "need *not* be 'detailed,' as long as the Plaintiff goes beyond a mere recitation of a cause of action." Pl. Resp. at 19–20 (emphasis in original). Plaintiff claims that he has identified paragraphs 1 through 5 of the mortgage as the provisions that were breached, and that he has sufficiently alleged that "Wells Fargo muddled foreclosure, by failing to credit his account for payments made during Paperwork Hell, and that this made reinstatement impossible, because it fraudulently inflated the amount required to reinstate." *Id.*

The Court concludes that summary judgment on Plaintiff's claim for breach of contract is appropriate, because he has not raised a genuine issue of material fact regarding the purported breach. Although Plaintiff claims in conclusory fashion that "the Servicer has muddled the foreclosure process, by misappropriating funds paid by Plaintiff relative to his account, and failing to credit the account accordingly," Compl. ¶ 65, Plaintiff has failed to introduce any actual evidence of misappropriation or a specific payment that was not properly credited. Nor has Plaintiff provided any evidence—other than his own Complaint—of any improper overcharge, or of Defendant collecting funds to pay insurance, but then actually failing to pay this expense. Indeed, as Defendant highlights, Plaintiff fails to identify any particular line item on the Customer Account Activity statement that he believes was incorrect. Def. Reply at 5.

*12 Plaintiff's conclusory allegations, without further specificity and evidentiary support, are insufficient. Numerous courts have agreed that nearly identical conclusory allegations by Plaintiff's counsel in other cases were insufficient to withstand a **motion** to dismiss, let alone one for summary judgment. *See Thill*, 8 F.Supp.3d at 955 (collecting cases, and finding that "Plaintiff's allegations do not identify the specific terms of the contract allegedly breached—such as identifying what payments were made, when or how they were supposed to be credited, what mistakes were made, why they are considered mistakes under the contract, etc." (quotation marks omitted)); *Ross*, 2014 WL 5390659, at *6 (concluding that the same "conclusory allegations, without accompanying factual development, are insufficient to state a claim"); *Alshaibani v. Litton Loan Servicing, LP*, 528 F. App'x 462, 465 (6th Cir.2013) ("As a practical matter, Plaintiffs' factually unadorned allegation that Litton misapplied their payments does no more to render their claim plausible than would a simple legal conclusion that Litton breached the mortgage."); *Boone v. Seterus, Inc.*, No. 13–13457, 2014 WL 1460984, at *2 (E.D.Mich. Apr.15, 2014) ("Here, Boone alleges that Defendants breached the requirements listed in paragraphs 1 through 5 of the mortgage by failing to credit her for payments she made, and then foreclosing.... Boone supplies no factual allegations as to how Seterus failed to credit Plaintiff for payments made. She merely offers a 'threadbare recital[ ] of the elements of a cause

of action.' (brackets in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

Furthermore, Plaintiff's reliance on *Twombly*, and his claim that his allegations "need *not* be 'detailed,' as long as the Plaintiff goes beyond a mere recitation of a cause of action," Pl. Resp. at 19–20 (emphasis in original), is misplaced. The *Twombly* standard applies to a **motion** to dismiss. Here, however, Plaintiff is facing a **motion** for summary judgment. The standard for such a **motion** is different; Plaintiff must rebut that no genuine issue of material fact exists as to his claim and that Defendant is entitled to judgment as a matter of law. In other words, although all inferences are drawn in Plaintiff's favor, Plaintiff must present sufficient evidence to create a genuine issue of material fact that makes submission to the jury appropriate. *See Donald v. Sybra, Inc.*, 667 F.3d 757, 760 (6th Cir.2012). At least one other court in this District has explained this difference to Plaintiff's counsel, but apparently to no avail. *See Cheesewright v. Bank of Am., N.A.*, No. 11–15631, 2013 WL 639135, at *3 (E.D.Mich. Feb. 21, 2013) ("This statement indicates confusion regarding the difference between surviving a **Motion** to Dismiss for Failure to State a Claim under Fed.R.Civ.P. 12(b)(6) and the instant **Motion** for Summary Judgment, made pursuant to Fed.R.Civ.P. 56."). In any event, Plaintiff has failed to meet his burden here.

*13 Plaintiff also claims that any deficiency in his pleading or evidence is due to his decision not to pursue discovery in light of Defendant's purported promise to consider him for a loan modification during the discovery period. Pl. Resp. at 20–21. Plaintiff argues that "Wells Fargo .... promised to review [him] for modification as a means to settle during the pendency of the Scheduling Order," and that "[i]f Wells Fargo had not strung Mr. Burniac along with lies during this time [regarding the pendency of the loan modification request], he would have engaged in discovery to further flesh out his claims, and he would have then had the opportunity to amend and provide even more specificity to his Complaint." *Id.*

The Court rejects Plaintiff's attempt to place the fault for his deficiencies on Defendant. After conducting numerous telephonic status conferences with the parties over the course of two-and-a-half months, the Court issued a Case Management and Scheduling Order that clearly set out the deadlines for discovery and dispositive **motions**. CMO (Dkt.9). This CMO provided over four months for conducting fact and expert discovery. Plaintiff did not request an extension of the discovery deadline in light of the purported settlement discussions. Nor does Plaintiff explain why Defendant should be blamed for Plaintiff's decision not to proceed with discovery—despite the pending request for a loan modification review—when the deadline was approaching. This is particularly true in light of Plaintiff's allegation that by May 2014, Defendant's counsel was not responding (or barely responding) to Plaintiff's counsel's communications regarding the loan modification request. *See* Pl. Resp. at 12–14. Accordingly, the Court rejects Plaintiff's argument that he should not be faulted for his inability to provide the requisite evidence and specificity because he did not engage in discovery. *Id.*

The Court, therefore, grants Defendant's **motion** regarding Plaintiff's claim for breach of contract (count three).

### G. Counts Four and Five: Intentional and Constructive Fraud

Plaintiff also raises claims for intentional and constructive fraud. In support of these claims, Plaintiff makes three allegations: (i) that Defendant knowingly and intentionally lied to Plaintiff that, if he agreed to stop making payments on the mortgage loan, Defendant would not conduct foreclosure proceedings and would grant a loan modification; (ii) that Defendant misrepresented that it had not receive loan modification documents Plaintiff sent, which resulted in him repeatedly submitting the same documentation and entering what he terms "Paperwork Hell"; and (iii) Defendant engaged in a conspiracy to "fabricate a phone paper trail that would suffice as a 'record chain of title,' by forging the Forged Assignment, and passing the same off as a legitimate document." Compl. ¶¶ 137–155.

Defendant responds that these claims are subject to dismissal because, among other reasons, the allegations fail to satisfy the specificity requirement of Federal Rule of Civil Procedure 9(b). Def. Br. at 15–17. Defendant maintains that Plaintiff does not explain who made the purported statements, when they were made, by what medium, whether there were witnesses, or how he was damaged. *Id.* at 17. Without directly addressing Defendant's concerns regarding Rule 9(b), Plaintiff responds that he has asserted claims for intentional and/or constructive fraud based on three issues:

> *14 First, Plaintiff contends Defendants tricked him into default with lies claiming he was required to be in default to be considered for modification. Second, Plaintiff

> contends that Defendants tricked him further into default, so he could not afford to get caught back up again, with lies claiming his financial package had not been received, when it had, i.e.[,] the Paperwork Hell process. Third, Plaintiff contends that Defendants tricked him into a false sense of security, with lies claiming that his loan was not in foreclosure and was not going to be sold at sheriff's sale, and then with lies claiming that the sheriff's sale had never occurred.

Pl. Resp. at 22. Plaintiff also argues that if Defendant wanted additional details about these claims, it could have sought discovery from him. *Id.* at 23.

The Court concludes that Plaintiff's allegations are insufficient to survive Defendant's **motion** for summary judgment. However, a point of clarification is necessary before discussing the merits.

Plaintiff's claim appears to have shifted in part between his Complaint and his **response** to the **motion** for summary judgment. In his Complaint, Plaintiff challenges the assignment as one of the three grounds for his fraud claim. *See* Compl. ¶¶ 143–149. In his **response** to the **motion** for summary judgment, however, the third purported fraud that Plaintiff identifies is being told "that his loan was not in foreclosure and was not going to be sold at sheriff's sale, and then ... that the sheriff's sale had never occurred." Pl. Resp. at 22. Therefore, it appears that Plaintiff has abandoned his fraud claims to the extent they were based on the assignment. Furthermore, Plaintiff's allegation that he was falsely told that the "sheriff's sale had never occurred" appears to be a boilerplate **response**, given that the record suggests no such sale of Plaintiff's property *has* occurred; indeed, upon filing this litigation, Plaintiff obtained an order enjoining Defendants from selling the property at a sheriff's sale. There is no evidence in the record that the sale occurred thereafter. *See* Order Granting Preliminary Injunctive Relief (Dkt. 1–1 (118 of 121 (cm/ecf page)).

Nevertheless, even without these deficiencies, and considering all of the fraud allegations on their merits, the Court concludes that Plaintiff has failed to satisfy Rule 9(b). That rule requires that a party asserting a fraud claim "state with particularity the circumstances constituting fraud."

The Sixth Circuit has interpreted Rule 9(b)'s particularity requirement as necessitating that a plaintiff, at a minimum, "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir.2008) (quotation marks and citation omitted). Here, Plaintiff has not specified who made the purported statements, where and when they were made, or by what method they were communicated. Nor has Plaintiff provided any specificity regarding what, precisely, was said.

**\*15** Numerous courts have found the same conclusory and boilerplate allegations made by Plaintiff's counsel here to be insufficient under Rule 9(b). *See, e.g., Thill,* 8 F.Supp.3d at 956–957 (collecting cases brought by Gantz Associates, and dismissing same allegations); *Cheesewright,* 2013 WL 639135, at \*6–7 ("It is clear that Counts 8 and 9 could not even survive a Rule 12(b)(6) **motion**, let alone summary judgment. Plaintiffs' Complaint does not describe any specific statements, does not identify the speaker, the time or place of the statements, or explain how the statements were fraudulent."); *Ross,* 2014 WL 5390659, at \*6–7 (dismissing same cookie-cutter allegations under Rule 9(b)); *Boone,* 2014 WL 1460984, at \*4 (same).[2]

Furthermore, even if the allegations themselves were sufficiently pled, Plaintiff has introduced no evidence showing a genuine issue of material fact that these statements were made. As explained above, Plaintiff relies solely on his allegations in his Complaint. *See* Pl. Resp. at 22. But the Complaint was not sworn to under penalty of perjury, and it fails to differentiate between those statements that are based on personal knowledge and those based on belief. Plaintiff offers no other evidence or testimony—such as an affidavit or deposition—attesting to these purported statements. This is insufficient to survive summary judgment.

Finally, Plaintiff once again claims that Defendant should be faulted for these deficiencies, because Defendant purportedly led Plaintiff into believing they may settle during the discovery period. Pl. Resp. at 23. Plaintiff argues that if "Wells Fargo really wanted more detail on the specifics of these allegations, it could have scheduled his deposition, or sent him requests for admission, or interrogatories, or requests for the production of documents." *Id.* The Court rejects this argument. Simply put, it is not Defendant's burden for Plaintiff to adequately plead and prove his claims.

Therefore, the Court dismisses Plaintiff's claims for intentional fraud (count four) and constructive fraud (count five).

**H. Count Seven: Civil Conspiracy**
Plaintiff next raises a claim for civil conspiracy, alleging that "Defendants have illegally, maliciously, and/or wrongfully conspired with one another with the intent to commit the torts of fraud and/or constructive fraud, and have further conspired to violate the Michigan Regulation of Collection Practices Act, and/or the various other torts alleged within the Counts contained within this Complaint, for the improper purpose covering [sic] up their failures, such that Defendants could force Plaintiff into foreclosure as soon as possible, and thereby effectuate a bailout and/or cash in on a private mortgage insurance policy." Compl. ¶ 163.

Defendant argues this claim is subject to dismissal for two reasons. First, Defendant asserts that a claim for civil conspiracy requires that an underlying tort have been committed, and Plaintiff has not shown any such tort. Def. Br. at 20–21. Second, Defendant claims that this cause of action requires Plaintiff to show an agreement, but Plaintiff has not proven any such agreement among Defendants, nor even identified the unknown Trust or Trustee with whom Defendant is alleged to have conspired. *Id.* Plaintiff responds simply by claiming that he has sufficiently set forth a claim for conspiracy, and then quoting directly from his Complaint. Pl. Resp. at 23–24. Plaintiff does not address Defendant's argument regarding the lack of evidence of an agreement, nor his failure to identify the unknown Defendants.

*16 "A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n,* 257 Mich.App. 365, 670 N.W.2d 569, 580 (Mich.Ct.App.2003) (quoting *Admiral Ins. Co. v. Columbia Cas. Ins. Co.,* 194 Mich.App. 300, 486 N.W.2d 351 (Mich.Ct.App.1992)). "[A] claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort." *Id.* (quoting *Early Detection Ctr., PC v. New York Life Ins. Co.,* 157 Mich.App. 618, 403 N.W.2d 830 (Mich.Ct.App.1986)).

The Court agrees that summary judgment on this cause of action is appropriate. As described throughout this decision, Plaintiff has failed to state any separate, viable tort claim, or provide evidence of an agreement to commit an unlawful act. Moreover, Plaintiff fails to identify the purported unknown Defendants, and Plaintiff has not alleged (or raised a genuine issue of material fact regarding) a concerted action between Wells Fargo and any other entity. Accordingly, as has been previously explained by numerous courts in cases brought by Plaintiff's counsel that **included** this same conclusory claim, Plaintiff has failed to sustain a cause of action for civil conspiracy. *See Thill,* 8 F.Supp.3d at 957; *Ross,* 2014 WL 5390659, at *7; *Boone,* 2014 WL 1460984, at *5; *Ordway v. Bank of Am., N.A.,* No. 13–13236, 2013 WL 6163936, at *4 (E.D.Mich. Nov.20, 2013); *Anderson,* 2013 WL 5770507, at *6.

The Court, therefore, grants Defendant's **motion** regarding Plaintiff's claim for civil conspiracy (count seven).

**I. Count Eight: Michigan's Regulation of Collection Practices Act**
Plaintiff also raises a claim for alleged violations of Michigan's Regulation of Collection Practices Act ("RCPA"), Mich. Comp. Laws § 445.251, *et seq.* In his Complaint, Plaintiff alleges the following purported prohibited acts:

> a. Communicating with Plaintiff in a misleading or deceptive manner.
>
> b. Making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt.
>
> c. Misrepresenting in a communication with Plaintiff the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of Defendants or Plaintiffs [sic].
>
> d. Communicating with Plaintiff without accurately disclosing the caller's identity.
>
> e. Communicating with Plaintiff when Plaintiff was actively represented by an attorney because Plaintiff's attorney's name and address were known.
>
> f. Using a harassing, oppressive, or abusive method to collect a debt, **including** causing a telephone to ring or engaging a person in telephone conversation repeatedly and continuously, or at unusual times or places which are known to be inconvenient to Plaintiff.

\*17  g. Failing to implement a procedure designed to prevent a violation by an employee.

Compl. ¶ 169. Plaintiff provides no further details of these alleged violations, other than to say that he "adopts and incorporates by reference each and every allegation contained in the [preceding] paragraphs [of the Complaint], as if fully set forth herein." *Id.* ¶ 167.

Defendant argues that Plaintiff only makes boilerplate allegations based on the statutory language, and that this is insufficient as a matter of law. Def. Br. at 21–22. Defendant highlights that Plaintiff fails to specify the purported actions that violated the statute, when these actions were taken, what was misrepresented, etc. *Id.*

Plaintiff responds that he has sufficiently alleged a claim under the RCPA, once again citing his Complaint. Pl. Resp. at 24. Plaintiff also argues that if Wells Fargo wanted additional details regarding the factual allegations supporting his claim, it could have engaged in discovery. Furthermore, Plaintiff reiterates his claim that, but for Defendant's promises to consider him for a loan modification, he would have "used the time to engage in offensive discovery ... which could have been used to file a 1st Amended Complaint containing the detail that Wells Fargo now complains is lacking." *Id.* at 25.

The Court concludes that this claim is subject to dismissal as woefully inadequately pled and supported. Numerous courts within this district have found that the exact same allegations contained here were vague and threadbare recitals that failed to state a claim. *See, e.g., Griffin v. JPMorgan Chase Bank, N.A.*, No. 13–10002, 2013 WL 6587870, at \*5 (E.D.Mich. Dec. 16, 2013) (collecting cases, and concluding that "[t]his Court now joins the various other Michigan **Federal courts** that have rejected nearly identical vague and conclusory allegations brought under Michigan's Regulation of Collection Practices Act by [Gantz Associates]"); *Stroud v. Bank of Am., N.A.*, No. 13–10334, 2013 WL 3582363, at \*9–10 (E.D.Mich. July 12, 2013). As explained more fully by Judge Bell of the Western District of Michigan:

> Rule 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," is applicable to all allegations of fraud, **including** allegations of fraud under the MCPA. *See Zanger v. Gulf Stream Coach, Inc.*, No. 05–72300, 2005 WL 3416466, at \*10 (E.D.Mich. Dec.13, 2005). Plaintiffs allege seven violations of the MCPA, four of which allege fraud: (1) communicating with Plaintiffs in a misleading or deceptive manner; (2) making a deceptive statement in a communication to collect a debt; (3) misrepresenting in a communication with Plaintiffs the legal status of a legal action being taken and the legal rights of Plaintiffs; and (4) communicating with Plaintiffs without accurately disclosing the caller's identity. (Compl.¶ 176(a)-(d).) Plaintiffs provide no details in these incredibly vague allegations. Plaintiffs do not provide the time or contents of the misrepresentations, nor do Plaintiffs provide who made the misrepresentation or when. Indeed, beyond the recitation of general behavior the MCPA prohibits, [this claim] is devoid of details.
>
> \*18  As for the alleged violations of the MCPA which do not involve fraud—(1) communicating with Plaintiffs when Plaintiffs were actively represented by an attorney; (2) using a harassing, oppressive, or abusive method to collect a debt, **including** causing a telephone to ring or engaging a person in telephone conversations repeatedly and at unusual times; and (3) failing to implement a procedure designed to prevent a violation by an employee —Plaintiffs merely quote the statute. *See* Mich. Comp. Laws § 445.252(h), (n), (q). Beyond quoting subsections (h), (n), and (q) from the statute, Plaintiffs make no allegations regarding [the defendant]'s conduct. Even under the lower pleading standard for non-fraud claims, this pleading is woefully inadequate. A plaintiff must provide more than "a formulaic recitation of a cause of action's elements" to survive a **motion** to dismiss. *Twombly*, 550 U.S. at 555; *see also Brady v. Chase Home Fin., LLC*, No. 1:11–CV–838, 2012 WL 1900606, at \*10 (W.D.Mich. May 24, 2012) (Quist, J.) (dismissing a plaintiff's MCPA claim because the allegations "merely parrot certain provisions of the statute" and "fail to provide any factual 'meat' for her bare-bones claim").

*Goodwin v. CitiMortgage*, No. 12–760, 2013 WL 4499003, at \*5 (W.D.Mich. Aug.19, 2013). Plaintiff's allegations in this case are identical to those set forth in *Goodwin*, and, therefore, suffer the same deficiencies. *Compare* Comp. ¶¶ 167–172 *with Goodwin*, No. 12–760, Compl. ¶¶ 174–178 (Dkt.12) (W.D.Mich.).

Plaintiff's arguments to the contrary are unavailing. First, Plaintiff argues that he "alleges that Wells Fargo made endless collection calls despite cease and desist requests; that Wells Fargo improperly threatened foreclosure; that Wells Fargo improperly assessed late fees; that Wells Fargo

reported false and derogatory information to the credit reporting agencies regarding the Mortgage loan account; that Wells Fargo made false representations that Plaintiff committed wrongful conduct; and false statements as to its standing to foreclose." Pl. Resp. at 24. In support of this claim, Plaintiff cites paragraphs 62–66 and 167 of his Complaint. Plaintiff claims this is sufficient to survive a **motion** for summary judgment.

However, paragraphs 62–66 and 167 of the Complaint contain the same type of vague, non-specific accusations that fail to satisfy Rules 8 and 9, as discussed above. These allegations do not contain any further information about when these actions were purportedly taken, by what method, who took them, or even what occurred. To the contrary, paragraph 63 specifically states that "Defendants' violations are too numerous to cite individually in this Complaint—the details of which will be further fleshed out through discovery." And, as courts have previously explained to Plaintiff's counsel, this language actually *supports* the Court's finding that Plaintiff's allegations are insufficient to withstand a **motion** to dismiss, let alone one for summary judgment. *See Griffin,* 2013 WL 6587870, at *6 ("Plaintiffs' indication that they will 'flesh out' the details of these violations during discovery indicates an acknowledgement by Plaintiffs that their ... Complaint lacks the factual specificity required in this post-*Twombly/Iqbal* world." (brackets omitted)); *Stroud,* 2013 WL 3582363, at *10 n. 8 (noting that the attorney from Gantz Associates "seems to acknowledge [the deficiencies in his pleadings] by merely inserting the violations listed in the statute and providing that 'the details' of these 'numerous violations' 'will be further fleshed out through discovery[.]' ").[3]

*19 Second, Plaintiff suggests that it is Defendant's fault that he cannot provide additional information or evidence, because he decided to forego conducting discovery during the discovery period in light of Defendant's promises (which Plaintiff now claims were false) to consider him for a modification. Pl. Resp. at 25. This argument is unpersuasive for the reasons discussed earlier, *i.e.,* Plaintiff had the opportunity to undertake discovery or request an extension to do so, but did not pursue either option.

Furthermore, Plaintiff's allegations are insufficient to withstand even a **motion** to dismiss under *Iqbal* and *Twombly;* he should not need additional discovery to provide more specificity for his claims, such as that he was subject to "endless collection calls by phone to Plaintiff, despite cease and desist requests." Compl. ¶ 63. The timing of such calls and when/how his "cease and desist requests" were made are matters within his own personal knowledge, as should be the remaining facts for his claims under the RCPA.

Finally, the Court rejects Plaintiff's argument that, "if Wells Fargo seeks additional details, ... it could [have] scheduled Mr. Burniac's deposition, sent him interrogatories, requests for production of documents, or requests for admission." Pl. Resp. at 25. As described earlier, it is Plaintiff's burden to sufficiently plead his claims, and, to overcome Defendant's **motion** for summary judgment, he must provide evidence showing a genuine issue of material fact. Plaintiff has met neither of these burdens.

Therefore, the Court dismisses Plaintiff's claim for violations of Michigan's Regulation of Collection Practices Act (count eight).

### J. Count Eleven: Breach of Contract of the Implied Duty of Good Faith and Fair Dealing

Finally, Plaintiff asserts a claim for breach of contract of the implied duty of good faith and fair dealing. Compl. ¶¶ 185–190. Plaintiff alleges that "Defendants had the discretion to charge Plaintiff for escrow items such as hazard insurance, and further to modify Plaintiff's Loan in accordance with the Home Affordable Mortgage Program and/or other loss mitigation programs." *Id.* ¶ 187. Plaintiff further claims that "Defendants charged Plaintiff for insurance, without paying the insurance policy, as a means to enrich themselves, and further as a means to force the loan into an improper default status, thereby leading to a bailout or to effectuate the cashing in on a private mortgage insurance policy." *Id.* ¶ 188.

Defendant argues that Michigan does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing. Def. Br. at 26. Plaintiff responds that Michigan does recognize such a cause of action where a party to the contract makes performance a matter of its own discretion. Pl. Resp. at 25–26. Plaintiff further asserts that Defendant had complete discretion over whether to modify his loan. *Id.* (Plaintiff does not address the escrow issue in **response** to Defendant's **motion**). In **response**, Defendant claims that Plaintiff has not identified any provision where Defendant reserved the right to decide how to perform, nor would the mortgage documents contain any such provision because "offering a loan modification was not even contemplated, much less agreed to, when this loan was originated." Def. Reply at 6–7.

*20 In general, Michigan courts do not recognize breach of the implied covenant of good faith and fair dealing as a stand-alone cause of action. *See Fodale v. Waste Mgmt. of Mich., Inc.*, 271 Mich.App. 11, 718 N.W.2d 827, 841 (Mich.Ct.App.2006). However, as Plaintiff recognizes, "[w]here a party to a contract makes the manner of its performance a matter of its own discretion, the law does not hesitate to imply the proviso that such discretion be exercised honestly and in good faith." *Burkhardt v. City Nat'l Bank of Detroit*, 57 Mich.App. 649, 226 N.W.2d 678, 680 (Mich.Ct.App.1975). The Fifth Circuit, in interpreting Michigan law, has explained the covenant of good faith and fair dealing as follows:

> The implied covenant of good faith and fair dealing essentially serves to supply limits on the parties' conduct when their contract defers decision on a particular term, omits terms or provides ambiguous terms.

*Hubbard Chevrolet Co. v. Gen. Motors Corp.*, 873 F.2d 873, 876–877 (5th Cir.1989). "[B]reach of the implied duty of good faith and fair dealing [can serve as] a basis for breach of contract in Michigan." *Super v. Seterus, Inc.*, No. 13–11626, 2014 WL 902827, at *5 (E.D.Mich. Mar.7, 2014).

As described, Plaintiff argues that Defendant retained discretion with respect to charging him escrow for insurance and granting a loan modification, but that Defendant did not pay the insurance policy or give him a modification. Compl. ¶¶ 187–188. However, Plaintiff does not explain what express contract serves as the basis for this purported discretion—the mortgage, the note, or some other purported agreement. Nor does Plaintiff cite any particular provision of such a document. This alone is sufficient to dismiss this claim. *See Maraulo v. CitiMortgage, Inc.*, No. 12–10250, 2013 WL 530944, at *11 (E.D.Mich. Feb.11, 2013) (Goldsmith, J.) (dismissing same claim brought by Gantz Associates because the "[p]laintiffs do not explain what contracts, if any, provide [the defendants] with this discretion").[4]

Furthermore, this claim cannot survive summary judgment on its merits as well. With respect to Plaintiff's claim about escrow, Plaintiff fails to provide any evidence that Defendant did not make the insurance payments despite charging him escrow, nor does he explain how Defendant retained the discretion to use the escrow to make these payments, as opposed to being obligated to do so. *See Soto v. Wells Fargo Bank*, No. 11–14064, 2012 WL 113534, at *5 (E.D.Mich. Jan.13, 2012) (finding that concerns about discretion with respect to escrow payments no longer apply after enactment of the Real Estate Settlement Procedures Act ("RESPA")); *Cheesewright*, 2013 WL 639135, at *4 (same); *see also* Mortgage at 5 (Dkt.17–3) ("Lender shall apply the Funds to pay the Escrow items no later than the time specified under RESPA.").

Regarding his claim based on the purported discretion to offer a loan modification, Plaintiff fails to cite any provision, in the mortgage or otherwise, that even considers loan modifications. Indeed, Plaintiff's claim appears to be non-contractual, claiming that Defendant failed to modify his loan "in accordance with the Home Affordable Modification Program and/or other loss mitigation programs." Compl. ¶ 187; *see Goodwin*, 2013 WL 4499003, at *7 (dismissing same claim because, even according to the plaintiff, "the discretion [the plaintiffs] allege [the defendants] possessed was expressly non-contractual," *i.e.*, "in accordance with HAMP and/or other loss mitigation programs."). To the extent he is relying on the mortgage and/or note, he fails to highlight any provision in those instruments addressing loan modifications. *See Maraulo*, 2013 WL 530944, at *11.

*21 Accordingly, the Court now joins the numerous other courts that have rejected this same claim brought by Plaintiff's counsel in other cases. *See, e.g., Super*, 2014 WL 902827, at *5 (dismissing claim under statute of frauds); *Goodwin*, 2013 WL 4499003, at *7; *Hewitt*, 2013 WL 3490668, at *11 (same); *see also Cheesewright*, 2013 WL 639135, at *4–5.

### V. CONCLUSION

For the foregoing reasons, the Court grants Defendant's **motion** for summary judgment (Dkt.17).[5] The Court will issue a separate judgment in favor of Defendants contemporaneously with this decision.

Although the Court grants Defendant's **motion**, the Court also feels it necessary to **briefly** discuss the questionable conduct of Plaintiff's counsel—Adam Gantz—and his law firm—Gantz Associates—with respect to this case, and other similar matters in this District. When this case was removed to this Court—based on a standard complaint all too familiar at this point in this District—Plaintiff's counsel filed a **motion** to remand raising many of the same arguments that had been repeatedly rejected by other courts in this District. The Court highlighted this problem, implying that it would not be

tolerant of this behavior in this litigation. *See* 12/17/13 Op. and Order at 5 n. 3 (Dkt.8)

Upon the filing of Defendant's **motion** for summary judgment, Plaintiff filed a **response** (which was stricken twice as failing to satisfy the Court's CMO) as to many of the causes of action, as described above. However, most (if not all) of the arguments raised by Plaintiff's counsel have been repeatedly rejected by courts in this District as meritless and/or based on insufficient pleadings containing the same types of (and, in many places, identical) allegations as those at issue here.

This is not the first time that Plaintiff's counsel's troubling behavior of ignoring repeated court rulings rejecting his meritless claims has been raised. In *Thill v. Ocwen Loan Servicing, LLC*, 8 F.Supp.3d 950, 958–959 (E.D.Mich.2014), Chief Judge Rosen noted that none of Plaintiff's counsel's foreclosure matters filed since 2011 regarding "Paperwork Hell" have successfully survived dispositive **motion** practice, and that "consistently advancing the same rejected legal theories and pleadings borders on sanctionable and ethical misconduct." Judge Rosen warned "Adam Gantz, ... and any other attorney associated with Gantz Associates ... [to] review their obligations under Federal Rule of Civil Procedure 11 ... as they proceed in advancing or maintaining similar actions in the future." *Id.* At least one other court in this district has followed Judge Rosen's lead, noting Plaintiff's counsel's questionable behavior of raising repeatedly rejected legal theories and claims. *See Jones v. Nationstar Mortg. LLC*, No. 14–11642, 2014 WL 5307168, at *1 n. 1 (E.D.Mich. Oct.16, 2014).

Like Judge Rosen, this Court is not unsympathetic to the plight of many homeowners here in Michigan and nationally, and the rights homeowners may have if there are actual, legitimate claims arising out of the foreclosure process. However, as with Judge Rosen, "[t]he Court is not sympathetic ... to counsel who bring questionable claims and utilize delay tactics in an effort to simply slow property proceedings in state court," a statement that seems to apply with great force toward Adam Gantz.

*22 Nevertheless, the Court declines to assess sanctions or recommend disciplinary action against Adam Gantz at this time. If he continues to waste the Court's time and the resources of opposing parties by bringing boilerplate claims and raising repeatedly rejected and meritless arguments, however, future courts—**including** this one—may not be so lenient.

SO ORDERED.

Footnotes

1    Plaintiff's reliance on *Kim*, 825 N.W.2d at 329 and *Sobh v. Bank of Am., N.A.*, No. 308441, 2013 WL 2460022, at *1–3 (Mich.Ct.App. June 6, 2013), is misplaced. As Chief Judge Rosen explained in *Griffin v. JPMorgan Chase Bank, N.A.*, No. 13–10002, 2013 WL 6587870, at *4 (E.D.Mich. Dec. 16, 2013), *Kim* and *Sobh* "do not so broadly hold, as Plaintiff suggests, that all 'mortgagor litigants ... have standing to challenge assignments of mortgages or lack thereof.' ... Rather, *Kim* and *Sobh* address what happens when there are defects or irregularities in the foreclosure process." *See also McDonald*, 2014 WL 1260708, at *3–4 (rejecting same argument raised by Gantz Associates based on *Kim* and *Sobh*, because those cases do not stand for the proposition that a litigant has standing to challenge assignments of mortgages, but rather suggest that a litigant has standing to sue if the statutory requirements regarding recordation of those assignments are not satisfied).

   Moreover, both *Kim* and *Sobh* recognized that a borrower challenging an assignment must show prejudice, *i.e.*, "that they would have been in a better position to preserve their interest in the property absent the noncompliance with the statute." *See Kim*, 825 N.W.2d at 337. Plaintiff has failed to make such a showing here.

2    Because the Court dismisses Plaintiff's fraud claims for the reasons stated here, it need not address Defendant's alternative arguments regarding truthfulness, the statute of frauds, whether the statements were about future conduct, and injury. *See* Def. Br. 18–19.

3    Given the lack of specificity in this case, Plaintiff's reliance on *Mielke v. Bank of America Home Loans Servicing LP*, No. 10–11576, 2011 WL 1464848, at *3–9 (E.D.Mich. Apr. 18, 2011)—a case in which the plaintiff pointed to specific language in loan servicing letters the plaintiff received and explained why these letters purportedly violated Michigan's Regulation of Collection Practices Act —is misplaced.

4    Furthermore, although Plaintiff mentions purported issues with the escrow in his Complaint, he fails to address these claims in **response** to Defendant's **motion** for summary judgment. Instead, in his **response**, Plaintiff proclaims that "Wells Fargo had complete discretion over whether to modify Mr. Burniac's loan.... Mr. Burniac has therefore stated a claim for breach of the implied duty

|   |   |
|---|---|
|   | of good faith and fair dealing[.]" Pl. Resp. at 26. The Court, therefore, deems Plaintiff's claim abandoned to the extent it relies on purported defects with the escrow. |
| 5 | The Court typically would grant a party leave to file a **motion** for leave to amend if this was a decision on a **motion** to dismiss based on insufficiency of the pleadings. *See* Fed.R.Civ.P. 15. However, Plaintiff had a full and fair opportunity to participate in discovery in this case; he just chose not to use it. Further, the dispositive **motion** deadline has passed, and Defendant filed a **motion** for summary judgment, not a **motion** to dismiss. *See Kienzle v. General Motors, LLC,* No. 11–11930, 2013 WL 511397, at * 6 (E.D.Mich. Feb.12, 2013) ("The Sixth Circuit has repeatedly held that allowing amendments after the close of discovery prejudices the defendant."); *Duggins v. Steak 'N Shake, Inc.,* 195 F.3d 828, 834 (6th Cir.1999); *Arnold v. Midwest Recovery,* No. 09–10371, 2011 WL 309000, at *1 n. 3 (E.D.Mich. Jan.27, 2011) (denying request for leave to amend raised for the first time in **response** to a **motion** for summary judgment, because discovery had closed and the **motion** cutoff had passed). Moreover, Plaintiff has not even requested leave to amend to clarify his allegations in the face of Defendant's **motion**, nor has he filed a Rule 56(d) affidavit explaining what further discovery he needs; he simply faults Defendant for his own inability to sufficiently plead his claims. Therefore, the Court declines to grant Plaintiff leave to file a **motion** for leave to amend. |

End of Document                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.