# EXHIBIT C

2:12-cv-14696-GER-PJK   Doc # 52-4   Filed 03/11/15   Pg 1 of 14   Pg ID 561

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

FLOYD'S 99 HOLDINGS, LLC,
a Colorado limited liability company,

    Plaintiff,

vs.

JUDE'S BARBERSHOP, INC.,
JUDE'S BARBERSHOP – OTTAWA, INC.,
JUDE'S BARBERSHOP – CASCADE, INC.,
JUDE'S BARBERSHOP – KALAMAZOO, INC.,
JUDE'S BARBERSHOP – LANSING DT, INC.,
JUDE'S BARBERSHOP – LANSING, INC.,
JUDE'S BARBERSHOP – PORTAGE, INC.,
Michigan corporations, and JBI-COTTONWOOD,
LLC, JBI-EAST PARIS, LLC, JBI-WEALTHY, LLC,
JBI-STANDALE, LLC, JBI-WALLED LAKE, LLC,
JBI-OKEMOS, LLC, Michigan limited liability
companies, and THOMAS MARTIN,

    Defendants.
_____/

Case No.

Hon.

**COMPLAINT AND JURY DEMAND**

Plaintiff, Floyd's 99 Holdings, LLC ("Floyd's 99"), through undersigned counsel, for its Complaint against Defendants Jude's Barbershop, Inc., Jude's Barbershop – Ottawa, Inc., Jude's Barbershop – Cascade, Inc., Jude's Barbershop – Kalamazoo, Inc., Jude's Barbershop – Lansing DT, Inc., Jude's Barbershop – Lansing, Inc., Jude's Barbershop – Portage, Inc., JBI-Cottonwood, LLC, JBI-East Paris, LLC, JBI-Wealthy, LLC, JBI-Standale, LLC, JBI-Walled Lake, LLC, JBI-Okemos, LLC (collectively, "Jude's") and Thomas Martin ("Martin") (collectively, "Defendants"), states and alleges as follows:

## I. NATURE OF THE CASE

1. Floyd's 99 owns and sells franchises which operate barbershops utilizing Floyd's 99's federally registered trademarks, including Floyd's 99's trade dress which includes a unique interior design, the use of vapor lock lights in metal cages, pendant lighting with exposed bulbs, mechanic's toolboxes and a distinctive display wall with music themed posters. Floyd's 99 opened its first barbershop in Denver, Colorado in February 2001 and there are more than 55 company-owned and franchised locations operating in ten states and two countries.

2. Subsequent to Floyd's 99's commencement of business, Defendants, through their agent Martin, in furtherance of their scheme to copy Floyd's 99's trade dress and to confuse and deceive consumers, entered at least one of Floyd's 99's barbershops in Colorado for the specific purpose of taking photographs and otherwise documenting and copying Floyd's 99's trade dress. Martin returned to Michigan with his photographs and other documents and Defendants subsequently commenced operation of barbershop businesses, intentionally copying Floyd's 99's unique designs and manners of conducting business thereby confusing and deceiving consumers.

3. This action is brought at law and in equity to prevent Defendants' continued federal trademark infringement, common law trademark infringement, and unfair competition.

4. Floyd's 99 seeks injunctive relief, actual damages, disgorgement of Defendants' profits and treble damages and attorneys' fees under the Lanham Act for Defendants' intentional wrongful acts.

## II. PARTIES

5. Floyd's 99 is a Colorado limited liability company with its principal place of business located at 5340 S. Quebec, Greenwood Village, Colorado 80111.

6. Jude's Barbershop, Inc. is a Michigan corporation with its principal place of business located at 4101 40th Street SE, Suite 3, Kentwood, Michigan 49512.

7. Upon information and belief, Jude's Barbershop – Ottawa, Inc. is a Michigan corporation with its principal place of business located at 125 Ottawa NW, Suite 1120, Grand Rapids, Michigan 49503.

8. Upon information and belief, Jude's Barbershop – Cascade, Inc. is a Michigan corporation with its principal place of business located at 4700 Cascade Road SE, Grand Rapids, Michigan 49546.

9. Upon information and belief, Jude's Barbershop – Kalamazoo, Inc. is a Michigan corporation with its principal place of business located at 4520 W. Main Street, Kalamazoo, Michigan 49006.

10. Upon information and belief, Jude's Barbershop – Lansing DT, Inc. is a Michigan corporation with its principal place of business located at 4101 40th Street, SE, Suite 3, Kentwood, Michigan 49512.

11. Upon information and belief, Jude's Barbershop – Lansing, Inc. is a Michigan corporation with its principal place of business located at 3415 E. Saginaw Street, Lansing, Michigan 48912.

12. Upon information and belief, Jude's Barbershop – Portage, Inc. is a Michigan corporation with its principal place of business located at 6800 S. Westnedge, Portage, Michigan 49002.

13. Upon information and belief, JBI-Cottonwood, LLC is a Michigan limited liability company with its principal place of business located at 7495 Cottonwood Drive, Jenison, Michigan 49428.

14. Upon information and belief, JBI-East Paris, LLC is a Michigan limited liability company with its principal place of business located at 3975 28th Street SE, Grand Rapids, Michigan 49512.

15. Upon information and belief, JBI-Wealthy, LLC is a Michigan limited liability company with its principal place of business located at 1551 Wealthy Street SE, Grand Rapids, Michigan 49506.

16. Upon information and belief, JBI-Standale, LLC is a Michigan limited liability company with its principal place of business located at 3888 Lake Michigan Drive NW, Grand Rapids, Michigan 49534.

17. Upon information and belief, JBI-Walled Lake, LLC is a Michigan limited liability company with its principal place of business located at 39580 W. 14-Mile Road, Unit 38, Walled Lake, Michigan 48390.

18. Upon information and belief, JBI-Okemos, LLC is a Michigan limited liability company with its principal place of business located at 1861 W. Grand River Avenue, Okemos, Michigan 48864.

19. Upon information and belief, Martin is an individual who resides in the State of Michigan and conducts business at 4101 40th Street SE, Suite 3, Kentwood, Michigan, 49512.

20. Defendants identified in Paragraphs 6 through 18 above are herein collectively referred to as "Jude's."

### III. JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because it arises under the federal Lanham Act and because the common law claims are joined with and substantially related to the claims under the federal trademark laws.

22. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a), (b) and (c).

23. Defendants are subject to the personal jurisdiction of this Court as events giving rise to the relief sought herein occurred in Michigan, including Defendants' purposeful infringement of Floyd's 99's trademarks and other conduct which has and will confuse and deceive consumers.

### IV. GENERAL ALLEGATIONS

24. In 1998, the founders and current owners of Floyd's 99 began to develop and implement a system of retail hair care businesses that provide a broad scope of services to men, women and children, including professional haircuts for a reasonable price in an atmosphere that can be described as the "hip" modern version of a traditional walk-in service barbershop.

25. By February 2001, Floyd's 99 began to conduct business at a barbershop located in Denver, Colorado using the name Floyd's 99 in conjunction therewith.

26. On October 28, 2005, Floyd's 99 filed for a federal registration of its mark which consists of the interior of a barbershop encompassing vapor lock lights in metal cages, pendant lighting with exposed bulbs, mechanic's toolboxes, stainless steel countertops with cut-ins and cut-outs, a vertical wall sign, and a display wall for displaying music themed posters ("Trade Dress"). That registration was issued by the U.S.P.T.O. effective July 15, 2008 as evidenced by Registration No. 3,467,850. A copy of that registration is attached hereto as **Exhibit 1**.

27. Since at least 2001, Floyd's 99 has used the Trade Dress in connection with its ownership and franchising of Floyd's 99 Barbershops.

28. Since 2001, Floyd's 99 has invested substantial sums of money in advertising, marketing and promoting the Floyd's 99 brand, trademarks and Trade Dress.

29. As a result of Floyd's 99's efforts, including its advertising and substantial expenditures, Floyd's 99 has established considerable goodwill in its trademarks and Trade Dress which are invaluable assets to Floyd's 99.

30. Martin learned of Floyd's 99's successful concept and traveled to Colorado for the specific purpose of observing, photographing and otherwise documenting Floyd's 99's Trade Dress with the intent of copying same and using Floyd's 99's Trade Dress to develop Defendants' barbershops and in so doing, confuse and deceive consumers.

31. In furtherance of their plan to intentionally copy and infringe Floyd's 99's Trade Dress, Martin entered one of Floyd's 99's barbershops located in Greenwood Village, Colorado in 2005 and had photographs taken of himself sitting in a Floyd's 99 Barbershop chair with Floyd's 99's distinct music themed poster display wall and vapor lock lights in metal cages displayed behind him. Defendants' then used those photographs of a Floyd's 99 Barbershop in their advertising and promotion of Defendants' barbershops. See Defendants' advertisement attached hereto as **Exhibit 2**.

32. Having photographed and documented in detail Floyd's 99's Trade Dress, Defendants thereafter began conducting business under the name Jude's Barbershop, intentionally utilizing and copying Floyd's 99's Trade Dress. See Jude's advertisement including a photograph of a Jude's Barbershop utilizing Floyd's 99's Trade Dress attached hereto as **Exhibit 3**.

33. Defendants have since opened at least 23 barbershops, each of which wrongfully uses and infringes Floyd's 99's Trade Dress, all as part of Defendants' plan and intent to confuse and deceive consumers.

34. Floyd's 99's entry into the Michigan market, including where Defendants' continuing acts of infringement are occurring, is imminent.

35. Defendants' use of Floyd's 99's Trade Dress is likely to cause confusion, mistake or to deceive consumers as to the origin, sponsorship or affiliation of their goods and services in a way that damages Floyd's 99 and infringes upon Floyd's 99's federally registered and common-law trademark rights.

36. Defendants' use of Floyd's 99's trademarks and Trade Dress has caused actual confusion in the marketplace that threatens to impair and further damage Floyd's 99's reputation and distinctive brand.

37. Defendants' conduct has injured Floyd's 99 and threatens to continue to injure Floyd's 99 unless enjoined by this Court.

38. Defendants' use of Floyd's 99's Trade Dress unfairly allows Defendants to trade off the goodwill built by Floyd's 99 and creates an unfair competitive advantage for Defendants.

39. Defendants' actions have the likelihood of affecting interstate commence by deceiving or confusing consumers, constitute a false designation of Defendants' goods or services by passing them off as being associated with Floyd's 99, suggests a nonexistent connection with Floyd's 99 and suggests that Floyd's 99 sponsors or approves Defendants' goods or services.

40. Despite Floyd's 99's demands, Defendants have failed and refused to discontinue their use of Floyd's 99's Trade Dress.

### FIRST CLAIM FOR RELIEF
### (Trademark Infringement)

41. Floyd's 99 incorporates the allegations set forth in paragraphs 1 through 40 as if fully set forth herein.

42. Floyd's 99's exclusive right to use the Trade Dress in connection with its advertising and operation of its businesses is evidenced by its federal registration of same. The registration for the Trade Dress is in full force and effect, unrevoked and uncancelled. The registration is *prima facie* evidence of the validity and the substance

8

of the Trade Dress and of Floyd's 99's ownership of and exclusive right to use the Trade Dress in commerce without restriction or limitation. The federal registration of the Trade Dress provides constructive notice of ownership as provided by the Trademark Act of 1946, 15 U.S.C. §§ 1057 and 1072.

43.  Floyd's 99 has developed a highly successful system and has devised services, procedures and programs to enable those who are granted the right to use the Trade Dress to compete more effectively in providing their products and services. Floyd's 99's franchisees' use of the Trade Dress inures to the benefit of Floyd's 99 pursuant to Section 5 of the Trademark Act of 1946, 15 U.S.C. § 1055.

44.  Floyd's 99 and its franchisees have developed a well known business reputation throughout the United States and the Trade Dress has been and continues to be widely publicized throughout the United States. As a result, consumers of Floyd's 99's products and services have come to associate the Trade Dress used by Floyd's 99 and its franchisees with products and services of a high and uniform quality and the provision of products and services under the Trade Dress has been and is substantial.

45.  Defendants' use of reproductions, copies or colorable imitations of the Trade Dress in Michigan, where Floyd's 99's entry into the market is imminent, is likely to confuse, deceive and cause mistake among consumers.

46.  Defendants' use of the Trade Dress constitutes trademark infringement within the meaning of 15 U.S.C. § 1114(1) and Defendants are willfully and deliberately infringing upon Floyd's 99's rights in the Trade Dress.

47. Defendants' acts have caused irreparable injury, loss of reputation and pecuniary damage to Floyd's 99 and its franchisees. Unless enjoined by this Court, Defendants will continue such wrongful acts of infringement to Floyd's 99's immediate and irreparable harm.

## SECOND CLAIM FOR RELIEF
### (Unfair Competition)

48. Floyd's 99 incorporates the allegations set forth in paragraphs 1 through 47 as if fully set forth herein.

49. Floyd's 99 trademarks, including its Trade Dress, are widely used in commerce in connection with its provision of goods and services.

50. Defendants, through the conduct described herein, have used and continue to use Floyd's 99's Trade Dress in a manner likely to cause confusion, or to cause mistake or to deceive consumers as to the affiliation, connection, or association of Defendants with Floyd's 99, or as to the origin, sponsorship, or approval of Defendants' goods and services.

51. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and (b), imposes civil liability on "[a]ny person, who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol or device or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion or to cause mistake or to deceive" or " in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin or his or her or another person's goods, services, or commercial activities."

10

52. Defendants' wrongful use of Floyd's 99's Trade Dress constitutes a false designation of origin, passing off and false advertising in connection with products and services distributed in interstate commerce and is in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and (b).

53. Defendants' acts have caused irreparable injury, loss of reputation and pecuniary damage to Floyd's 99 and its franchisees. Unless enjoined by this Court, Defendants will continue such wrongful acts to Floyd's 99's immediate and irreparable harm.

## THIRD CLAIM FOR RELIEF
### (Common Law Unfair Competition and Trademark Infringement)

54. Floyd's 99 incorporates the allegations set forth in paragraphs 1 through 53 as if fully set forth herein.

55. Defendants, through the wrongful conduct described herein, including their intentional use of Floyd's 99's Trade Dress, have engaged in trademark infringement and unfair competition under Colorado common-law and such conduct is likely to confuse and deceive consumers into falsely believing there is a connection between Defendants and Floyd's 99.

56. Defendants' acts have caused irreparable injury to Floyd's 99's goodwill and reputation and the injury to Floyd's 99 is and continues to be ongoing and irreparable. Unless enjoined by this Court, Defendants will continue such wrongful acts to Floyd's 99's immediate and irreparable harm.

## V. REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Floyd's 99 Holdings, LLC, requests the following relief:

A. Preliminary and permanent injunctive relief enjoining Defendants from using any of Floyd's 99's trademarks, including its Trade Dress, for any purpose; from representing by any means whatsoever, directly or indirectly, that Defendants and their products and services are associated in any way with Floyd's 99; from otherwise taking any other action likely to cause confusion, mistake or deception in consumers; and from otherwise unfairly competing with Floyd's 99 or misappropriating Floyd's 99's reputation and goodwill;

B. An award to Floyd's 99 of its actual damages and disgorgement of Defendants' unjust and unlawful profits arising from Defendants' unlawful conduct, together with pre- and post-judgment interest, costs and expert witness fees;

C. An award to Floyd's 99 of treble damages and attorneys' fees as a result of Defendants' intentional infringement pursuant to 15 U.S.C. § 1117 and as otherwise provided by law;

D. That Defendants be ordered to make a written report within a reasonable period to be filed with the Court, detailing the manner of Defendants' compliance with the requested injunctive relief; and

F. That Floyd's 99 be granted such other relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiff, Floyd's 99 Holdings, LLC, demands a trial by jury of all issues so triable.

Dated this 23rd day of October 2012.

                                        Respectfully submitted,

                                        WARNER NORCROSS & JUDD LLP


By:   *s/ James Moskal*
      James Moskal
      900 Fifth Third Center
      111 Lyon Street NW
      Grand Rapids, MI  49503-2487
      Telephone:  616-752-2164
      Fax:  616-222-2164
      Email:  jmoskal@wnj.com

          –and–

Jeffrey J. Cowman, #11199
BALLARD SPAHR LLP
1225 17th Street, Suite 2300
Denver, CO  80202
Telephone:  303-292-2400
Fax:  303-296-3956
Email:  cowmanj@ballardspahr.com

**ATTORNEYS FOR PLAINTIFF,
FLOYD'S 99 HOLDINGS, LLC**

094000.094073 8674451-1

13