# EXHIBIT D

2:12-cv-14696-GER-PJK  Doc # 52-5  Filed 03/11/15  Pg 1 of 10  Pg ID 575

**From:** Joel Baar
**Sent:** Monday, November 24, 2014 2:49 PM
**To:** Billy Jones
**Subject:** RE: Clean copies

Billy:

Attached is what my client has agreed to sign (and did sign already, much to my surprise). It is the Settlement Agreement which omits any reference to the license agreement in the Explanatory Statement(C) as well as Paragraph 2. Please review it and let me know your thoughts.



*Joel W. Baar*
joelb@bolhouselaw.com
**Bolhouse, Baar & Lefere, PC**
Grandville State Bank Building
3996 Chicago Drive SW ~ Grandville, MI 49418
Phone: (616) 531-7711 ~ Fax: (616) 531-7757

www.bolhouselaw.com

The information contained in this electronic message is attorney-client privileged and confidential and exempt from disclosure under applicable laws. If you are not the intended recipient, be aware that any downloading, copying, disclosure, distribution or use of the contents of this information is strictly prohibited. The recipient should check this email and any attachments for the presence of viruses. Bolhouse, Baar & Lefere P.C. accepts no liability for any damage caused by any virus transmitted by this email. If you have received this communication in error, please FORWARD this message back to the sender at the email address above, DELETE this message from all mailboxes and any other electronic storage medium and DESTROY all copies.

**From:** Billy Jones [mailto:billy.jones@moyewhite.com]
**Sent:** Friday, November 21, 2014 5:28 PM
**To:** Joel Baar
**Subject:** Clean copies

Joel. Clean copies attached.

I changed the heading for section 4 of the license and the text of 4.1 to what we discussed.

Also, in the settlement agreement, I defined "poster walls" with reference to the lawsuit as you suggested, and used that term throughout.

Please read through, and let's confirm that this works.

Billy
**William "Billy" F. Jones**

1

Partner
303 292 7930

☒

Moye White LLP Attorneys at Law
16 Market Square 6th Floor 1400 16th Street Denver
CO 80202-1486
**tel** 303 292 2900 **fax** 303 292 4510
www.moyewhite.com

| Profile | Download vCard |

☒

2

# CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement ("Agreement") is made as of November 24, 2014 between Floyd's 99 Holdings, LLC, a Colorado limited liability company ( "Floyd's), and Jude's Barbershop-Ottawa, Inc., Jude's Barbershop – Cascade, Inc., Jude's Barbershop – Kalamazoo, Inc., Jude's Barbershop – Lansing DT, Inc., Jude's Barbershop – Lansing, Inc., Jude's Barbershop – Portage, Inc., Michigan Corporations, JBI-Cottonwood, LLC, JBI-East Paris, LLC, JBI-Wealthy, LLC, JBI-Standale, LLC, JBI-Walled Lake, LLC, JBI-Okemos, LLC, Michigan Limited Liability Companies, and Thomas Martin (collectively, "Jude's"). Floyd's and Jude's are collectively referred to as the "Parties" and may be individually referred to as a "Party." This Agreement is made in consideration of the following facts:

## EXPLANATORY STATEMENT

A.      Floyd's filed a Complaint with the alleging trademark infringement, unfair competition and common law unfair competition (the "Claims") in connection with Jude's opening of numerous barbershops that infringe upon Floyd's federally protected trade dress; and Jude's has denied any wrongdoing or other liability related to the Claims.

B.      The lawsuit is pending in the U.S. District Court for the Eastern District of Michigan, Case No. 2:12-CV-14696-GER-PJK.

C.      On September 11, 2014, the parties entered into a hand-written document entitled "Settlement Agreement Points," in which they agreed that the terms of that Agreement referenced below, would be set forth in formal documents, to be drafted and executed within three weeks, or no later than October 2, 2014. The Parties then agreed to extend this date to early November 2014 and the Court granted an extension for the filing of any order of dismissal.

D.      The Parties wish to mutually and amicably settle all asserted or potential claims or controversies between them, arising before the Effective Date (defined below), including those related to or raised in the Lawsuit.

## AGREEMENT

Therefore, in consideration of the mutual agreements set forth below, for other good and valuable consideration, the receipt and sufficiency of which are acknowledged, and in full compromise, settlement, and satisfaction of all disputes amongst the Parties, the Parties agree as follows:

1.      Effective Date.

The effective date of this Settlement Agreement shall be the date it is executed by the last signatory hereto ("Effective Date").

02130155.1

2. **Settlement Terms.**

(a) **Agreement and Jude's Payment.** With the execution of this Agreement, Jude's will be entitled to use its current poster wall for a period of one year for each of Jude's 24 locations for the consideration of $1,250 per location, or the total sum of $30,000 (the "Settlement Amount"), to be paid within 10 days of the execution of this Agreement.

(b) **Jude's Removal of Poster Walls.** Within one year of the Effective Date, Jude's will complete the removal of the poster walls from all of its 24 locations and substitute artistic murals or other artistic designs in the place of the poster walls. Poster Wall means the wall directly above the stainless steel counter top and no other wall. The murals or other artistic designs will not resemble Floyd's poster walls and instead will resemble the exemplars attached to this Settlement Agreement as **Exhibit B**, but may use other artistic designs. Nothing in this Agreement shall be construed to prohibit Jude's from, in the course of time, making changes to their walls provided there is no infringement of Registration 3,467,850.

(c) Jude's acknowledges that Floyd's owns and maintains the sole statutory and common law rights in its name, trademarked phrases and trade dress.

(d) Within six weeks of the Effective Date, Jude's will remove any and all depictions of the poster wall located directly above the stainless steel counter top from its advertising, whether online or otherwise, and this Agreements will limit the use of the poster walls to in-store use following this six week time period.

(e) Any Jude's location which has not completed the removal of the poster wall located directly above the stainless steel counter top and the substitution of the murals or other artistic designs within one year of the Effective Date will be shut down, and Jude's will pay a one time noncumulative total fee of $25,000.00 to Floyd's as liquidated damages and/or a penalty.

(f) By executing this Agreement, Jude's certifies that Jude's has already removed and changed all of its horizontal signs, its vapor lock lighting and pendant light bulbs and any stainless steel countertops with cut-ins/cut-outs. The Parties agree that Jude's may continue to use the multi-drawer mechanics' toolboxes presently in use at Jude's.

(g) During the term of this Agreement or until all posters have been removed from the poster wall located directly above the stainless steel counter top, Jude's will not expand and open or operate new shop locations beyond those counties in which one or more of Jude's 24 locations is presently operating. Once this Agreement has expired or until all posters have been removed from the poster wall located directly above the stainless steel counter top, this geographic limitation will expire.

(h) A second lawsuit exists between the parties and Jude's insurer, West Bend Mutual Insurance Company, the same being also filed in the U.S. District Court for the Eastern District of Michigan, captioned *West Bend Mutual Insurance*

02130155.1                                    2

*Company v. Floyd's 99 Holdings, LLC, et al.*, Case No. 2:14-cv-11869-GER-PJK. The second lawsuit seeks declaratory judgment regarding West Bend's coverage obligations in connection with commercial insurance policies issued to Jude's. The Parties agree that this second lawsuit shall also be dismissed. Each Party shall bear that Party's own costs and attorneys' fees in connection with this second lawsuit.

(i) The Parties agree that no party shall issue a press release or post on its website or publish advertising about the settlement.

3. <u>Covenant to Indemnify and Not to Pursue Claims</u>. Upon full execution of this Agreement and payment of the Settlement Amount, the Parties will file with the Court a stipulation to dismiss the Lawsuit with prejudice. The Parties further covenant and agree that they will not institute, prosecute, encourage and/or participate in any way in instituting or prosecuting any suit or action to enjoin or to recover from the other damages or compensation of any kind, character, or description for matters arising out of the Lawsuit, or other circumstances giving rise to the Lawsuit. Unconditionally, immediately and on demand, the Party in breach of this section shall save and hold harmless the other Party from and against any and all actions, causes of action, claims, demands, counterclaims, liabilities, losses, damages and expenses, including costs and attorneys' fees, that may be sustained or incurred by reason of any breach of this section.

4. <u>Release by Floyd's</u>. In consideration of these mutual promises and obligations, the promises and covenants contained herein, and other good and valuable consideration, the sufficiency of which Floyd's acknowledges, Floyd's, on behalf of itself and its past, present, and future members, owners, partners, associates, franchisees, employees, consultants, attorneys, and representatives, as well as their heirs, predecessors, successors, and assigns (collectively referred to as the "Releasing Floyd's Parties"), forever releases and discharges Jude's and its past, present, and future partners, associates, employees, consultants, attorneys, insurers, and representatives, as well as their heirs, predecessors, successors, and assigns (hereafter collectively referred to as the "Released Jude's Parties"), from all claims, demands, obligations, judgments, actions, causes of action, liens, indebtedness, and liabilities, known or unknown, in law or equity, for injuries, losses, or damages, of whatever kind or character, whether personal, property, economic, or noneconomic, relating to or arising from the Claims or the relationship between the Parties.

It is possible that other injuries, damages, losses, or future consequences or other matters described above which are not now known may develop or be discovered. This release, and the compromise upon which it is based, is expressly intended to cover and include, and does cover and include, a release by the Releasing Floyd's Parties of all such future injuries, damages, losses, or future consequences or results of known or unknown injuries, including a release and waiver of all rights, causes of action, claims, and lawsuits that may exist or arise in the future because of such future injuries, damages, losses, or future consequences or results of known or unknown injuries relating to or arising from the Claims or the relationship between the Parties. The Releasing Floyd's Parties are giving up any right they may have to bring any legal

02130155.1                                    3

claim whatsoever, whether known or unknown, suspected or unsuspected, against any of the Released Jude's Parties, except for claims based on breach of this Agreement. Nothing in this release shall prohibit or release any claims for breach of this Agreement.

Floyd's expressly consents and agrees that this release shall be given full force and effect according to each and all of its express terms and provisions, including those relating to unknown claims, injuries, demands, rights, lawsuits, or causes of action. Floyd's acknowledges and agrees that this waiver is an essential and material term of this release and the compromise settlement that led to it, and that without this waiver the compromise settlement would not have been accomplished. Floyd's has had an adequate opportunity to consult and has consulted with its attorneys with respect to this waiver and understands and acknowledges its significance.

5. <u>Release by Jude's</u>. In consideration of these mutual promises and obligations, the promises and covenants contained herein, and other good and valuable consideration, the sufficiency of which Jude's hereby acknowledges, Jude's, on behalf of itself and its past, present, and future members, owners, partners, associates, employees, consultants, attorneys, and representatives, as well as their heirs, predecessors, successors, and assigns (collectively referred to as the "Releasing Jude's Parties"), forever releases and discharges Floyd's and its past, present, and future partners, associates, employees, consultants, attorneys, and representatives, as well as their heirs, predecessors, successors, and assigns (hereafter collectively referred to as the "Released Floyd's Parties"), from all claims, demands, obligations, judgments, actions, causes of action, liens, indebtedness, and liabilities, known or unknown, in law or equity, for injuries, losses, or damages, of whatever kind or character, whether personal, property, economic, or noneconomic, relating to or arising from the Claims or the relationship between the Parties.

It is possible that other injuries, damages, losses, or future consequences or other matters described above which are not now known may develop or be discovered. This release, and the compromise upon which it is based, is expressly intended to cover and include, and does cover and include, a release by the Releasing Jude's Parties of all such future injuries, damages, losses, or future consequences or results of known or unknown injuries, including a release and waiver of all rights, causes of action, claims, and lawsuits that may exist or arise in the future because of such future injuries, damages, losses, or future consequences or results of known or unknown injuries relating to or arising from the Claims or the relationship between the Parties. The Releasing Jude's Parties are giving up any right they may have to bring any legal claim whatsoever, whether known or unknown, suspected or unsuspected, against any of the Released Floyd's Parties, except for claims based on breach of this Agreement. Nothing in this release shall prohibit or release any claims for breach of this Agreement.

Jude's expressly consents and agrees that this release shall be given full force and effect according to each and all of its express terms and provisions, including those relating to unknown claims, injuries, demands, rights, lawsuits, or causes of action.

02130155.1                                        4

Jude's acknowledges and agrees that this waiver is an essential and material term of this release and the compromise settlement that led to it, and that without this waiver the compromise settlement would not have been accomplished. Jude's has had an adequate opportunity to consult and has consulted with its attorneys with respect to this waiver and understands and acknowledges its significance.

6. **Covenant Not to Sue.** The Parties, on behalf of themselves and the Releasing Floyd's Parties and the Releasing Jude's Parties, respectively, agree that they have not commenced and will not commence any action, lawsuit, arbitration or other proceeding against the each other relating to the released Claims or any other matter released. The Parties, on behalf of themselves, the Releasing Floyd's Parties and the Releasing Jude's Parties, further agree that the Released Floyd's Parties and the Released Jude's Parties are entitled to the immediate dismissal with prejudice or, in the event that is not granted, preliminary and permanent injunctive relief, prohibiting the prosecution of any such action or proceeding, as well as any resulting monetary damages, including but not limited to attorneys' fees and costs related to defending any such action or proceeding. However, any action or proceeding brought to enforce (but not to rescind or reform) the terms of this Agreement is excepted from this covenant not to sue.

7. **No Admission of Wrongdoing.** By entering into this Agreement, the Parties admit no wrongdoing or liability as a result of any act or failure to act, whether singularly or collectively, and the consideration for the settlement delivered by a Party to any other Party shall not be deemed an admission of any wrongdoing or liability by that Party.

8. **Independent Legal Advice.** Each Party has received independent legal advice from its own attorneys with respect to the advisability of entering into and executing this Agreement.

9. **No Reliance on Extrinsic Facts.** No Party (or any owner, member, manager, officer, director, partner, associate, employee, representative, attorney, or agent of any Party) has made any statement or representation to any other Party regarding any facts relied upon in entering into this Agreement other than those set forth in this Agreement. Likewise, no Party relies upon any statement, representation, or promise of any other Party (or any owner, member, manager, officer, director, partner, associate, employee, representative, attorney, or agent of any Party) in executing this Agreement, except as expressly stated in this Agreement. The Parties expressly assume the risk that the facts or law may be, or may become, different from the facts or law as presently believed or understood by the Parties.

10. **Parties Have Read Agreement.** Each Party or a responsible agent of that Party has read this Agreement and understands its content.

11. **Authority to Execute.** Each Party has full power and authority to execute, deliver, and perform this Agreement and each has taken all necessary steps for the execution and delivery of this Agreement.

12.   **No Assignment of Claims.**  No Party has previously assigned, transferred, granted, or purported to assign, transfer, or grant any of the claims, demands, causes of action, suits, controversies, liabilities, or obligations released by this Agreement.

13.   **Tax Effects of Settlement.**  Each Party acknowledges that it has discussed the tax consequences of entering into this Agreement with counsel and/or tax advisors. No Party makes any representation to another Party regarding the tax consequences of this Agreement, and each Party shall bear its own tax consequences relating to or arising from this Agreement.

14.   **No Admission of Liability.**  Nothing in this Agreement shall be construed as an admission of liability by any Party or its owners, members, managers, officers, directors, shareholders, affiliates, partners, associates, employees, contractors, agents, representatives, or attorneys.

15.   **Entire Agreement.**  This Agreement constitutes the full and complete understanding and agreement of the Parties with respect to the subject matter covered by it. No addition, deletion, or amendment shall have any force or effect, except as mutually agreed to in a writing signed by all of the parties.

16.   **Successors and Transferees.**  This Agreement shall be binding upon and inure to the benefit of each Party's current and former parent entities, subsidiaries, affiliates, successors, heirs, and assigns.

17.   **No Construction Against Drafter.**  Each Party has cooperated in the drafting and preparation of this Agreement. In any construction to be made of this Agreement, the same shall not be construed against any Party.

18.   **Necessary and Further Documents.**  The Parties agree to execute all such further and additional documents as shall be reasonable, necessary, or desirable to carry out the provisions of this Agreement.

19.   **Severability.**  If any provision or part of this Agreement is held invalid or unenforceable for any reason, the remainder of this Agreement shall nonetheless remain in full force and effect.

20.   **Headings.**  Each separately numbered term of this Agreement is contractual, and not merely a recital.

21.   **Counterparts.**  This Agreement may be executed in counterparts and shall be fully effective when executed by all Parties.

22.   **Costs and Attorneys' Fees.**  Each Party shall bear that Party's own costs and attorneys' fees in connection with the disputes identified as well as with the negotiation and execution of this Agreement. In the event of any legal dispute between the Parties with regards to this agreement, the prevailing party in any proceeding shall be awarded its attorneys' fees and costs.

23. <u>Governing Law.</u>  This Agreement shall be construed and enforced in accordance with the laws of the State of Michigan.

FLOYD'S 99 HOLDINGS, LLC

By: _____
Its: _____
Date: _____

JUDE'S BARBERSHOP-OTTAWA, INC.,
JUDE'S BARBERSHOP – CASCADE, INC.,
JUDE'S BARBERSHOP – KALAMAZOO, INC.,
JUDE'S BARBERSHOP – LANSING DT, INC.,
JUDE'S BARBERSHOP – LANSING, INC.,
JUDE'S BARBERSHOP – PORTAGE, INC.,
MICHIGAN CORPORATIONS,
JBI-COTTONWOOD, LLC,
JBI-EAST PARIS, LLC,
JBI-WEALTHY, LLC,
JBI-STANDALE, LLC,
JBI-WALLED LAKE, LLC,
JBI-OKEMOS, LLC,
MICHIGAN LIMITED LIABILITY COMPANIES, and
THOMAS MARTIN

By: _____
Its: _President & Managing Partner_
Date: _11-24-14_

02130155.1

7