UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

FLOYD'S 99 HOLDINGS, LLC,
A Colorado limited liability company,

    Plaintiff,

Case No. 2:12-cv-14696

Hon. Gerald Rosen

JUDE'S BARBERSHOP, INC.,
JUDES BARBERSHOP-OTTAWA, INC.
JUDE'S BARBERSHOP – CASCADE, INC.
JUDE'S BARBERSHOP – KALAMAZOO, INC.
JUDE'S BARBERSHOP – LANSING DT, INC.
JUDE'S BARBERSHOP – LANSING, INC.
JUDE'S BARBERSHOP – PORTAGE, INC.
Michigan corporations, and JBI-COTTONWOOD, LLC,
JBI-EAST PARIS, LLC, JBI-WEALTHY, LLC,
JBI-STANDALE, LLC, JBI-WALLED LAKE, LLC,
JBI-OKEMOS, LLC, Michigan limited liability companies,
and THOMAS MARTIN,

    Defendants.

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION IN LIMINE REGARDING RUDY'S BARBERSHOP

Defendants Jude's Barbershops, JBI, etc. (collectively "Jude's") and Thomas Martin respond to Plaintiff Floyd's Motion in Limine Regarding Rudy's Barbershop as follows:

1.    In response to the allegations contained in paragraph 1 of Plaintiff's motion in limine, Defendants admit only that Floyd's alleges a trade dress violation, but Defendants deny any infringement of Floyd's alleged trademark.

1

2. In response to the allegations contained in paragraph 2 of Plaintiff's motion in limine, Defendants asserted many affirmative defenses, one of which was that Floyd's obtained its trade dress registration by fraud.

3. In response to the allegations contained in paragraph 3 of Plaintiff's motion in limine, Defendants have provided evidence of other barbershops, including Rudy's, to dispel any likelihood of confusion between Jude's and Floyd's. Defendants further provided exhibits pertaining to Rudy's to show that Floyd's obtained the trademark by fraud because Rudy's had been operating barbershops with similar theme and decor prior to Floyd's application for trademark.

4. In response to the allegations contained in paragraph 4 of Plaintiff's motion in limine, Defendants plan to present the deposition testimony of Wade Weigel and Katie Trent to show that Floyd's obtained the trademark by fraud because Rudy's had been operating barbershops with similar theme and decor prior to Floyd's application for trademark. This Court previously issued an Order permitting the use of this video testimony.

5. Defendants further assert that they plan to use photos of other barbershops, including Rudy's, to dispel any likelihood of confusion between Jude's and Floyd's. Rudy's Barbershop or other barbershops have not filed a claim in this case, but the evidence of Rudy's barbershops is relevant and admissible.

6. In response to the allegations contained in paragraph 6 of Plaintiff's motion in limine, Defendants' evidence of other barbershops, including Rudy's, is relevant to refute any likelihood of confusion between Jude's and Floyd's.

7. In response to the allegations contained in paragraph 7 of Plaintiff's motion in limine, Defendants do not concur in Plaintiff's motion and ask the court to deny Plaintiff's motion.

WHEREFORE, Defendants respectfully request that this Honorable Court DENY Plaintiff Floyd's motion to strike evidence of Rudy's barbershop and allow Defendants to introduce this evidence at trial.

        Respectfully submitted,

        Law Office of James Jablonski
        /s/ James A. Jablonski
        James A. Jablonski
        1801 Broadway, Sue 1100
        Denver, CO 80202
        (303)292-0110

        Collins Einhorn Farrell PC
        /s/ Timothy F. Casey
        Timothy Casey (P31836)
        Julie Nichols (P56921)
        4000 Town Center, 9th Floor
        Southfield, MI 48075

Dated: April 10, 2015        (248) 355-4141

## DEFENDANTS' BRIEF IN RESPONSE TO PLAINTIFF'S MOTION IN LIMINE REGARDING RUDY'S BARBERSHOP

### Issue Presented

Should the Court allow Defendants to present evidence related to Rudy's Barbershop pursuant to FRE 401 and 403?

*Plaintiff answers*:   The Court should bar such evidence.

*Defendants answer*:   The Court should permit such evidence.

### Statement of Controlling Authority

Federal Rules of Evidence 401, 403

*Data Concepts, Inc v Digital Consulting, Inc*, 150 F.3d 620 (6th Cir. 1998)

*AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786 (6th Cir. 2004)

### Factual Background

This is an action for trade dress infringement. Plaintiff Floyd's has asserted a claim against Defendants alleging that the interior décor used in Jude's Barbershops is confusingly similar to the interior décor registered by and used in Floyd's Barbershops. Plaintiff has the burden of showing that there is a likelihood of confusion between Floyd's and Jude's because of the alleged similarities. Defendants seek to rebut the claim that Jude's interior décor is confusingly similar to Floyd's interior decor. Defendants have also asserted affirmative defenses, including lack of a

4

valid trademark, and fraud on the United States Patent and Trademark Office (USPTO).

In about 1999, before opening Floyd's, owner Paul O'Brien visited shops in various areas of the country looking for ideas. One of the shops Paul O'Brien visited was the Rudy's Barbershop on University Avenue in Seattle, Washington. (Ex. 1, O'Brien Dep. Tr. pp. 36-41). That Rudy's shop had a music-themed poster wall, tool boxes, and stainless steel counters. These three elements became primary features of Floyd's Registration.

Defendants deposed Wade Weigel and Katie Trent, both of Rudy's. This testimony and the corresponding exhibits support Defendant's contention that Rudy's had these features in 1999 when O'Brien visited Rudy's; in fact, Rudy's continues to use these features. At the outset of its operations, Rudy's was in Seattle and surrounding metropolitan areas, but then expanded to Oregon and California. Floyd's started in Denver, Colorado, expanded to other places in Colorado, and now operates in 12 states. Rudy's and Floyd's are both in the Los Angeles metropolitan area, about a mile apart. (Ex. 1, O'Brien Dep Tr. p. 42).

Floyd's has taken an expansive view of its rights and even sent letters to shops in areas where Floyd's has no presence to complain about the use of tool boxes and/or poster walls. (Ex. 2, Karen O'Brien Dep. Tr. pgs. 29-30). Floyd's has filed this suit

even though Floyd's and Defendants are not in competition for the same customers anywhere.

Defendants intend to present evidence to establish that Rudy's barbershops used similar trade dress prior to the time Floyd's sought registration of its trade dress; that Floyd's knew Rudy's had superior rights to the trade dress; and that Floyd's failed to disclose those facts to the USPTO in order to fraudulently procure registration of its trade dress.

### Standard of Review

District Courts are permitted to rule on motions in limine and exercise discretion when resolving questions of relevancy and admissibility of evidence at trial. *Patterson v. Cnty. of Wayne*, 259 F.R.D. 286, 288 (E.D. Mich. 2009). Relevant evidence is evidence that has a tendency to make a fact of consequence to the action more or less probable. F.R.E. 401.

### Argument

In order to prove trade dress infringement, Floyd's must prove that its trademarks are valid, that Defendants are using the same or similar marks, and that Defendants' alleged use of Floyd's marks is likely to cause confusion." *Goscicki v. Custom Brass & Copper Specialties, Inc.*, 229 F.Supp.2d 743, 747 (E.D. Mich. 2002). Floyd's and its owners knew about Rudy's prior to opening the first Floyd's shop and certainly knew about Rudy's when they applied for the Floyd's Registration. Failure

to disclose Rudy's was a fraud on the USPTO. Further, evidence of third-party use of Plaintiff's alleged trade dress is relevant and admissible to show that the trade dress is relatively weak, generic, and entitled to less protection than a stronger trade dress.

I. **Evidence of Rudy's superior right to the interior décor and trade dress is relevant to a determination of the validity of Floyd's trade dress registration.**

A fraudulently procured registration can warrant removal of the trademark's protection – rendering invalid a claim for infringement. *3M Co. v. Intertape Polymer Group, Inc.*, 423 F.Supp.2d 958, 961 (D. Minn. 2006). "In any action involving a registered mark the court may determine the right to registration, order the cancellation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1119; *Dallas Cowboys Football Club, Ltd. v. Am.'s Team Properties, Inc.*, 616 F. Supp. 2d 622, 644 (N.D. Tex. 2009). Defendants have a vested interest in challenging Floyd's trademark because they stand to suffer financial loss if Floyd's prevails on its claims. At a minimum, if Floyd's prevails, then Defendants potentially may have to change the decor of more than 20 stores.

The potential fraud arises from the oath or declaration trademark applicants must sign when they file their applications. An applicant who files a trademark application for a mark knowing that third parties are using the same mark, as a mark,

in connection with the same or similar goods and services as his may violate the terms of this oath. That can lead to a finding of fraud.

To establish fraud, a defendant must plead and prove:

(1) That there was, in fact, another use of the same or confusingly similar mark at the time the oath was signed;

(2) The other user(s) had legal rights superior to the applicant's rights;

(3) The applicant knew that the other user had rights in the mark superior to applicant's and either believed that a likelihood of confusion would result from applicant's use of its mark or had no reasonable basis for believing otherwise; and

(4) Applicant, in failing to disclose these facts to the Patent and Trademark Office, intended to procure a registration to which applicant was not entitled.

See *Qualcomm Inc. v. FLO Corporation*, 93 USPQ2d 1768, 2010 WL 985358 (TTAB 2010).

Fraud requires that the registrant knew of the third party users at the time it filed its application. Floyd's and the O'Briens knew about Rudy's prior to opening their first shop and certainly knew about Rudy's when they applied for the Registration.

Floyd's argues that this defense is immaterial. It is not. Floyd's pled the existence of its Registration and obviously has no intention of pursuing the case without taking whatever advantage that may provide. The most obvious is the presumption of distinctiveness. Trade dress is either inherently distinctive or has achieved secondary meaning. Floyd's asserted in its application that its trade dress

8

acquired secondary meaning. As part of that assertion, Floyd's emphasized its music-themed poster wall.

The fact that Floyd's may prevail without a registration does not somehow imply that Defendants are not entitled to seek invalidation of the Floyd's registration. If Floyd's loses its registration, its case changes in many ways – not least of which is that Floyd's loses its presumption of distinctiveness.

Under Federal Rule of Evidence 401, evidence is relevant if it has a tendency to make a fact of consequence more or less probable than it would be without the evidence. Defendants asserted an affirmative defense that Floyd's fraudulently obtained its trade dress registration by knowingly failing to disclose to the USPTO that Rudy's had a superior right to the use of the trade dress elements. Defendants intend to present evidence that will establish that Rudy's had a superior right to the use of the trade dress at the time Floyd's registration was filed, that Floyd's knew of Rudy's superior right and knew that a likelihood of confusion would result, and that Floyd's intentionally failed to disclose those facts to the USPTO to fraudulently obtain its registration.

Federal Rule of Evidence 403 permits a court to exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Evidence of Rudy's prior use of Floyd's alleged trade dress is

relevant and admissible to the determination of the validity of Floyd's registration. The evidence is not a waste of time or confusing, and its' probative value outweighs any potential prejudicial impact.

II.     Evidence of Rudy's interior décor and trade dress is relevant to a determination of the strength of Floyd's trade dress, and the likelihood of <u>confusion between Floyd's and Jude's.</u>

"Likelihood of confusion is the basic test of both common law trademark infringement and federal statutory trademark infringement." *Audi AG v. D'Amato*, 381 F. Supp. 2d 644, 659 (E.D. Mich. 2005) *aff'd,* 469 F.3d 534 (6th Cir. 2006). The likelihood of confusion is determined by: (1) the strength of the plaintiff's mark; (2) the relatedness of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) the degree of purchaser care; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines. *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982) (citation omitted); *see also Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 645 (6th Cir.2002) (applying the eight *Frisch's* factors to determine the likelihood of confusion with regard to trade dress.)

The level of protection afforded to a particular trademark depends on the strength or weakness of the trademark - stronger trademarks are entitled to greater protection. *Cosmetic Dermatology & Vein Centers of Downriver, P.C. v. New Faces Skin Care Centers, Ltd.*, 91 F. Supp. 2d 1045 (E.D. Mich. 2000). A party may

10

establish the strength or weakness of a particular trademark or trade dress by examining the use of similar trademarks or trade dress by third-parties. As the number of identical or similar marks in use increases, the likelihood of confusion decreases. *General Mills Inc. v. Kellogg Co.*, 824 F.2d 622, 626-27 (8th Cir. 1987).

The strength of a mark is a determination of the mark's distinctiveness and degree of recognition in the marketplace. "'A mark is strong if it is highly distinctive, *i.e.,* if the public readily accepts it as the hallmark of a particular source; it can become so because it is unique, because it has been the subject of wide and intensive advertisement, or because of a combination of both.' " *Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1264 (6th Cir. 1985) (quotation omitted). The stronger the mark, all else equal, the greater the likelihood of confusion. *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1109 (6th Cir. 1991).

As stated in comment g to the Restatement of Torts Sec. 729 (1938), "[t]he greater the number of identical or more or less similar trade-marks already in use on different kinds of goods, the less is the likelihood of confusion...." Indeed, courts have found extensive third-party uses of a trademark to substantially weaken the strength of a mark. *See, e.g., Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 259-60 (5th Cir. 1980) (multiple uses of "Domino" discussed in finding mark weak outside of specific uses); *Empire Nat'l Bank v. Empire of America*, 559 F. Supp. 650, 655 (W.D.

11

Mich. 1983) (multiple uses of "Empire" discussed in finding mark to be relatively weak); 3A R. Callmann, Sec. 20.44.

The Sixth Circuit has held that evidence of third-party use of similar marks can establish that a registered trademark is weak. *Data Concepts, Inc v Digital Consulting, Inc*, 150 F.3d 620, 625 (6th Cir. 1998), abrogated on other grounds, *Hana Financial Inc. v. Hana Bank*, 135 S. Ct. 901 (2015). *See also General Mills Inc. v. Kellogg Co.*, 824 F.2d 622, 626-27 (8th Cir. 1987) (holding that "[e]vidence of third party usage of similar marks on similar goods is admissible and relevant to show that the mark is relatively weak and entitled to a narrower scope of protection.")

In *Data Concepts,* the Sixth Circuit held that "a mark is weakened outside of the context in which it is used if there is third-party use of the mark." *Data Concepts*, 150 F.3d at 625. The Court determined that the trial court had erred in failing to "properly assess the significance of evidence of numerous other instances of third-party use of the [trademark]" and the defendant had testified that it had located over ninety websites incorporating a similar trademark. *Id.*

Similarly, in *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 794 (6th Cir. 2004), modified on other grounds by 15 U.S.C. § 1125, the Sixth Circuit held that the defendant had successfully proven that the trademark in question was weak by presenting nearly 200 pages of evidence documenting the active use of the similar marks by third-parties in a variety of industries. *AutoZone,* 373 F.3d at 794-95. The

Court stated that the defendant "can rebut the presumption of [the trademark's] strength by proving extensive third-party use of similar marks." *Id.* at 794.

Likewise, in *Cosmetic Dermatology, supra*, the defendants presented evidence of over 90 subsisting registrations and pending applications in the USPTO of logos similar to the trademark at issue, as well as evidence of similar logos used to advertise similar services as the trademark at issue. *Cosmetic Dermatology*, 91 F. Supp. at 1051-52. The Court held that the evidence of third-party use of similar logos tended to show that the trademark in question was weak and relatively generic. *Id., citing McKee Baking Co. v. Interstate Brands Corp.*, 738 F. Supp. 1272 (E.D. Mo., 1990) (holding that evidence of third-party usage of similar marks on similar goods is admissible and relevant to show that trademark is relatively weak and entitled to a narrower scope of protection.)

The Sixth Circuit considers third party usage of similar marks under the "strength of the mark" likelihood of confusion factor. *Homeowners Group, Inc.*, 931 F.2d at 1108. The Sixth Circuit expressly ruled that it was error to exclude evidence of third party use of similar marks. *See also Citizens Banking Corp. v. Citizens Financial Group, Inc.*, 320 Fed. Appx. 341, 347 (6th Cir. 2009) (third-party use was "particularly persuasive" to show weakness of trademark).

Other jurisdictions have allowed evidence of third-party use of a mark or trade dress as evidence of the weakness of a particular trademark. *See Amstar Corp.*, 615

13

F.2d at 259-60 (holding that documentation of extensive third-party use of a similar trademark was entitled to "much greater weight than were accorded them by the district court"); *Yankee Candle Co. v. New England Candle Co.*, 14 F. Supp. 2d 154, 163, *vacated pursuant to settlement,* 29 F. Supp. 2d 44 (D. Mass. 1998) (holding that evidence of other stores with similar storefronts as the plaintiff's claimed trade dress was admissible and contributed to the finding that the plaintiff's store front was not entitled to protection.)

Pursuant to Federal Rule of Evidence 401, evidence is relevant if it has a tendency to make a fact of consequence more or less probable than it would be without the evidence. Evidence of third-party use of similar trade dress, such as Rudy's, is relevant in determining the strength or weakness of Floyd's trade dress. As the cases above establish, the use of a particular mark or trade dress by third-parties is relevant and admissible to prove that a mark is weak or generic, and that there is no likelihood of confusion. Defendants' proposed evidence of Rudy's barbershops, specifically its decor and styling, is relevant to a determination of the strength of Floyd's trade dress and the lack of a likelihood of confusion between Floyd's and Jude's barbershops.

Federal Rule of Evidence 403 only permits a court to exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly

presenting cumulative evidence. The evidence of third-party use of similar trade dress is relevant to the questions of trademark strength and the likelihood of confusion, which are the basis of Floyd's claims. Defendants are entitled to rebut Plaintiff's allegations, as the Sixth Circuit repeatedly has recognized. Such evidence will not cause juror confusion or constitute a waste of time. The evidence will provide a basis for the jury to determine the strength of Floyd's trade dress and the existence or lack of a likelihood of confusion. The probative value of the evidence of other similar barbershops is not outweighed by any of the factors outlined in Federal Rule of Evidence 403.

These arguments do not detract from Defendants' argument that Floyd's must establish competition in the same geographic area or at least that Floyd's has a sufficiently well-known trademark that would confuse customers. *See Larco Bros. Inc. v. Luca's Chophouse, LLC*, 621 F. Supp. 2d 466, 473 (E.D. Mich. 2008) (geographic scope supported lack of confusion). Given that Rudy's is in the Pacific Northwest and Floyd's is in Colorado and a few points East, there was no likelihood of confusion as to Defendants. Yet Floyd's sought its registration and has since treated its trade dress as a kind of national entitlement irrespective or where it has done business or even advertised.

## Requested Relief

Evidence of Rudy's superior right to use of the trade dress is relevant to Defendants' affirmative defense regarding Floyd's fraudulent procurement of its trade dress registration. Additionally, evidence of third-party use of a trademark or trade dress, including Rudy's, tends to show that the mark or trade dress is weak, generic, and entitled to lesser protection. Such evidence is relevant and admissible to the determination of the likelihood of confusion between Floyd's and Jude's.

WHEREFORE, Defendants respectfully request that this Honorable Court DENY Plaintiff Floyd's Motion in Limine Regarding Rudy's Barbershops and permit Defendants to introduce such evidence at trial.

Respectfully submitted,

Law Office of James Jablonski
/s/ James A. Jablonski
James A. Jablonski
1801 Broadway, Sue 1100
Denver, CO  80202
(303)292-0110

Collins Einhorn Farrell PC

/s/ Timothy F. Casey
Timothy Casey (P31836)
Julie Nichols (P56921)
4000 Town Center, 9th Floor
Southfield, MI 48075
Dated: April 10, 2015         (248) 355-4141

16

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2015, my secretary, Sherry Lilley, electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following counsel of record:

Elizabeth H. Getches
Moye White LLP
16 Market Square, 6th Floor
1400 16th Street
Denver, CO  80202-1486
liza.getches@moyewhite.com

William F. Jones
Moye White LLP
16 Market Square, 6th Floor
1400 16th Street
Denver, CO  80202-1486
billy.jones@moyewhite.com

James Moskal
Warner Norcross & Judd LLP
900 Fifth Third Center
111 Lyon Street NW
Grand Rapids, MI  49503-2487
jmoskal@wnj.com

Homayune A. Ghaussi
Warner Norcross & Judd LLP
2000 Town Center, Suite 2700
Southfield, MI  48075
hghaussi@wnj.com

Collins Einhorn Farrell PC

*/s/ Timothy F. Casey*
Timothy Casey (P31836)
Julie Nichols (P56921)
4000 Town Center, 9th Floor
Southfield, MI 48075
(248) 355-4141

Dated: April 10, 2015